PRICE et al. v. CHICAGO, S. F. & C. RY. CO.

(*Circuit Court, N. D. Illinois.* March 25, 1889.)

1. CONTRACTS—ENGINEER'S ESTIMATES—ESTOPPEL.
    Plaintiffs contracted to do certain construction work for defendant, "under the direction and supervision of the chief engineer * * * and his assistants, by whose measurements and calculations the quantities and amounts of the several kinds of work * * * shall be determined, and whose determination shall be conclusive upon the parties. * * * The said chief engineer shall decide every question * * * relative to the execution thereof, and his decision shall be binding and final." The work was done under the supervision of an assistant engineer, who each month forwarded his estimates to the chief engineer, who paid plaintiffs monthly on the basis of such estimates, and they paid their subcontractors monthly on the same basis. After the completion of the work the chief engineer made a remeasurement thereof, when it was discovered that the assistant engineer's estimates, without the fault of plaintiffs or their subcontractors, were largely in excess as to quantities, the result being that the subcontractors had been greatly overpaid. *Held*, that defendant, and not plaintiffs, must bear the loss; that, notwithstanding the terms of the contract, defendant was estopped to deny the correctness of the estimates of the assistant engineer whom it had placed in charge of the work.

2. SAME—DECISION OF ENGINEER.
    The clause of the contract making the chief engineer the final umpire in all differences between the parties under the contract relates only to the execution of the work, and has no application to such a question as this.

At Law. Action on contract.
*Swett & Grosscup*, for plaintiffs.
*Williams & Thompson*, for defendant.

BLODGETT, J. This suit is brought to recover a balance claimed to be due plaintiffs on a contract in writing made on the 21st day of March, 1887, between plaintiffs, constituting the firm of Price, McGavock & Co., party of the first part, and the Chicago, Santa Fe & California Railway Company, of the second part, by which plaintiffs agreed to do all the grading, clearing, grubbing, and masonry necessary to complete the road-bed of the railroad of the party of the second part from the east bank of the Mississippi river eastward for a distance of 50 miles, which, in fact, included that portion of defendant's line of railway between the Mississippi river and Galesburg in the state of Illinois. It is admitted that the plaintiff soon after the making of this contract sublet the same to the firm of Jones, Forrest & Bodkin, who did the work called for by the contract, and this suit is prosecuted in the name of the plaintiffs for the use of

Jones, Forrest & Bodkin; and although the contract provides in terms that the work shall not be sublet, or the contract assigned, the parties have stipulated in writing that the defendant will claim no advantage or defense by reason of the plaintiffs having sublet the work.    The chief controversy in the case relates to the work done on division No. 9, which was about 12 miles in length, the 50 miles covered by the contract having for purposes of construction been divided by defendant into divisions, and the work on each division having been in charge of an assistant engineer, or division engineer, who was employed by the defendant, and acted under the general direction of the chief engineer of defendant.    The contract contained the following provisions, which bear upon the questions raised in this case:

"The work shall be executed under the direction and supervision of the chief engineer of said railway company and his assistants, by whose measurements and calculations the quantities and amounts of the several kinds of work performed under this contract shall be determined, and whose determination shall be conclusive upon the parties.   *   *   *   The said chief engineer shall decide every question which can or may arise between the parties relative to the execution thereof, and his decision shall be binding and final upon both parties.   *   *   *   It is further agreed between the parties that monthly payments shall be made by the party of the second part on the certificate of the engineer for work done, deducting 10 per cent. from the value of work done as agreed compensation for damages to be forever retained by the party of the second part, in case the whole amount of work herein named shall not be done in accordance with this agreement.   *   *   *   The aforesaid party of the second part hereby agrees that whenever this contract shall be completely performed on the part of the party of the first part, and the engineer has certified the same in writing, the said party of the second part shall within ten days thereafter pay to said party of the first part any remaining sums due for said work according to this contract."

It is claimed on the part of plaintiffs that the work on this division 9 was sublet by the subcontractors Jones, Forrest & Bodkin to divers other subcontractors under them, to be paid for at certain rates, according to the quantities and classifications made by the engineer in charge; that estimates or certificates were made by such engineer from month to month of the amount and class of work done on said division, and Jones, Forrest & Bodkin paid their subcontractors for the work done by them each month on the basis of these monthly estimates; that, after the work on this division was completed, the chief engineer of the road caused a remeasurement and reclassification of the work on this division to be made, from which it appeared that the monthly estimates made by the assistant or division engineer had been largely in excess as to quantities, and classified so as to make it much more costly to the defendant; and by this final estimate, made by the chief engineer after the completion of the work on the entire 50 miles, the excess paid by reason of these overestimates on division 9 was recouped out of the general balance due the contractors for the whole work.    The contention on the part of the plaintiffs is that, as they settled with and paid their subcontractors on the basis of quantities and classifications of the work shown in the monthly estimates of the defendant's assistant engineer in charge of this division, and on the

assumption that said quantities and classifications were correctly rendered, after such payments defendant was estopped, as against the plaintiffs, from remeasuring or reclassifying such work, even if the estimates of the engineer in charge were incorrect, and deducting the said overpayments from the balance due on the whole contract; that if any one has to suffer loss by reason of the incompetency of the defendant's engineer it should be the defendant, rather than the contractors, who acted in good faith, and made payments to the subcontractors who had done the work on the basis of the correctness of these monthly estimates. It is contended on the part of the defendant that the contract is an entirety for the whole work, and that, if the plaintiffs have been overpaid for any part of it, the defendant has the right to deduct such overpayment from any balance remaining due the plaintiffs under the contract; that the monthly estimates were only approximate and subject to correction in the final estimate and calculations to be made after the completion of the entire work; and that by the terms of the contract the measurements and classifications of the work made by the chief engineer and his assistants in the final estimate are binding and conclusive upon the plaintiffs.

There is really no substantial dispute upon the material facts in the case. It is conceded that Jones, Forrest & Bodkin, under their subcontract with plaintiffs, performed the work called for by the contract between the plaintiffs and the defendant. The proof also shows that the work on this division No. 9 was substantially all performed by persons who had subcontracts under Jones, Forrest & Bodkin, and said subcontractors were paid, so far as quantities and classifications of the work were concerned, from month to month, on the basis of the monthly estimates made by the defendant's assistant engineer of that division; the mode of doing business in regard to these monthly estimates being for each division engineer to make up his estimate at the beginning of each month for the work done the previous month, and forward it to the chief engineer. These monthly estimates of the division engineers were forwarded to the plaintiffs with a check in payment, according to the terms of the contract, who furnished a copy of said estimates to Jones, Forrest & Bodkin, with a check for the amount due them under their subcontract with plaintiffs, and they (Jones, Forrest & Bodkin) in turn settled with their subcontractors on the basis of these estimates as to quantities and classifications. The testimony also shows that these monthly estimates on division 9 were largely in excess of the work actually done, and the necessary result of this method of estimating and paying for the work done from month to month was that the subcontractors under Jones, Forrest & Bodkin were largely overpaid, and the loss by reason of the overpayment must fall on plaintiffs, and on the subcontractors directly under them, if the chief engineer can now revise and correct his assistant's monthly estimates, and deduct the overpayments made for this work from the balance due on the contract. It must be admitted that, if any recovery is had in this case in favor of the plaintiffs, it can only be upon the rights of Price, McGavock & Co. under their contract with the defend-

ant, and the proof shows that the result of these erroneous estimates as to quantities and classifications of the work done on this division 9 was to cause Price, McGavock & Co. to pay Jones, Forrest & Bodkin more on account of each monthly estimate for this division than they would if the estimates had been correct, and Jones, Forrest & Bodkin, in turn paid more to their subcontractors than they would have been entitled to receive if correct monthly estimates had been made; so that the effect of this revision of the estimates on division 9 is to make Price, McGavock & Co. the losers to the extent of the errors corrected, and Jones, Forrest & Bodkin, being also the losers, can properly prosecute this suit in the name of the principal contractors, and for their own use.

My own conclusion is that, as both Price, McGavock & Co. and Jones, Forrest & Bodkin acted upon the basis of these monthly statements as to quantities and classes of work shown in those estimates, the defendant is estopped from correcting those estimates to the damage of the plaintiffs, or those who claim under them. I do not think that the clause of the contract which makes the chief engineer the final umpire in all differences between the parties arising under this contract furnishes any defense. The language of the clause is that the chief engineer shall decide every question which can or may arise between the parties relative to the execution of the work, and his decision shall be final. The question which has arisen here is not as to the execution, but as to whether under the facts the defendant is bound by the measurements and calculations of quantities of the work returned by the defendant's assistant engineer, under whose immediate charge and supervision the work was done. It is not a question as to the execution of the contract, but a question as to the right to change the estimates under the circumstances, and, in effect, these overpayments from the plaintiffs which have been made to the subcontractors under Jones, Forrest & Bodkin. Nor do I deem it necessary for the purposes of this case to decide what are the powers of the chief engineer in making what he terms the "final estimate." Probably if the contractors had not acted on these monthly or running estimates as the work progressed, and paid the men who actually did the work on the basis furnished by those estimates, the right to correct errors might have existed; but here were false quantities and classifications returned by the man whom the defendant had clothed with authority and power to calculate these quantities and make classifications of the work, and return them for the purpose of making monthly payments. And, while it may be granted that either the plaintiffs or defendant must suffer for the errors made by this man, I think the facts make a case for the application of the familiar rule that where two innocent parties must suffer for the acts of a third, the loss shall fall upon the one who placed it in the power of the third to make the mistake.

The provision of the contract as to the duties of the chief engineer in relation to this work creates at least an implied obligation on the part of the defendant to furnish competent and honest engineers, and if any one is obliged to lose by this engineer's lack of ability or honesty it should be the defendant who employed him. I may add that I do not

deem it necessary to decide whether the errors in question arise from this engineer's incompetency or dishonesty, although it is fit that I should say that there is no proof whatever that these false estimates were made at the instance or with the knowledge of the plaintiffs, or of Jones, Forrest & Bodkin. There will therefore be a finding in favor of the plaintiffs for the amount shown by the estimates to be due them on the basis of the correctness of the monthly estimates on division 9, and for the extra work,—such as the extension of embankments at the ends of the bridges, side-track work, etc.,—of which there is no dispute.