JoNes, Judge,
delivered the opinion of the court:
Plaintiff by contract with defendant undertook to build 3.528 miles of road in Hot Springs National Park in Arkansas, to furnish all labor and materials and to perform all work in grading and surfacing same in accordance with drawings and specifications.
The general excavation was to be paid for at the rate of 70 cents per cubic yard. Other types of work were to be paid for at special named prices. The total price of the various units of material and labor was estimated to be approximately $184,292.25, and performance bond was executed in that amount.
Notice to proceed was received by the contractor April 10, 1935, thus fixing the date for completion in compliance with the terms of the contract as not later than November 21, 1935.
Plaintiff alleges breach of contract by defendant, uncompensated changes in construction requirements, damages for delay and unpaid balance, the total of the various items claimed being $135,787.68, for which he sues.
The road was to be built up the mountain-side adjacent to Hot Springs and within the park.
There is no doubt that considerable extra work was done. The evidence, however, is conflicting, some of the claims are indefinite, the blame not always easily fixed, and the record voluminous.
We have undertaken to sort the claims, to select those in which the amounts are proven with reasonable certainty, and in reference to which responsibility. can be definitely fixed, and to disregard the others.
The evidence does not show that the contracting officer exercised any contractual authority other than the signing of the contract. The contract designated the Chief Engineer *535 of the Bureau of Public Eoads and the District Engineer of such Bureau as authorized representatives of the contracting officer. Contractual authority on this project was exercised by the District Engineer acting through local engineers, the latter having charge of the work and plaintiff’s working contact being with them. For convenience they will be referred to as the Engineer.
All the first bids exceeded the estimate made by the Engineer and were rejected. Some restrictions were removed and new bids called for. Plaintiff, who had bid on both invitations, was the low bidder in the second and was awarded the contract.
Between the two bid's plaintiff had gone over the site with the Engineer. The project consisted of a roadway around the mountain in the form of an elongated major bend known as the Main Line and was about 2.1 miles long. From a point along the Main Line a spur line about 1.4 miles in length diverged and ran up the mountain having a loop or turn-around at its detached end. The Main Line was in effect the relocation of an existing road.
It was the duty of defendant’s surveyors to stake the job for structures, inlets, drains, pipes, cuts, and fills.
There was some shifting of stakes on parts of the road without any change order and there were other changes in alignment from the contract plans in the same portion of the road. The net effect as to changes in excavation are not satisfactorily proved. They also had the effect of delaying construction, to what extent is indeterminable.
On another part of the road plaintiff was required to 'and did excavate rock for a ditch, also at picnic grounds and parking areas, none of which were shown on or required by the original plans. Plaintiff has been paid for this work at the rate of 70 cents per cubic yard, the rate stipulated for general excavation. The record strongly indicates that it was worth more and that plaintiff was paid less than adequate compensation. However, there was no formal change order and no agreement as to price. Plaintiff did not pursue the method plainly laid down in his contract in order to estab *536 lish whatever rights he may have had, and therefore, cannot recover additional compensation for this work.[1]
The 4,010 cubic yards of rock fall into a different category. This was a part of the general excavation and was a part of the building of the road. While it involved a change in the original contract plans such a change was authorized by the terms of the contract. These terms stipulated that the rate of pay for cuts and fills in the building of the road, regardless of classification, should be 70 cents per cubic yard. Plaintiff was paid at this rale. No other price was agreed upon and plaintiff did not protect his rights by pursuing the method set out in the contract. He is not entitled to recover any additional amount for this work.
Defendant disputes the question of whether there was an actual increase in the rock excavation when all the road that was affected by the change is taken into consideration, but even asserts there was a net decrease rather than an increase. However, since plaintiff is not entitled to recover on this item this becomes unimportant.
Additional subgrade excavation claimed by plaintiff is not satisfactorily proved.
The contract provided for payment for the hauling of material as directed more than 1,000 feet. The agreed price for overhaul was one cent per station yard. There is a balance due on this item of $2,653.26.
On another part of the road plaintiff, acting on plans that had been discarded by the Government (other plans having been duly furnished plaintiff) did considerable blasting before the error was discovered by his engineer. This wasted blasting was in no way the fault of defendant.
At Station 44 a retaining wall was built. This required considerably more excavation than had been anticipated, the Engineer requiring continuation until a good foundation was reached. Another change was made, at the suggestion of the Engineer but without change order, so that the wall was built of concerté with stone facing instead of wholly of stone. Also the plans for the retaining wall required that *537 “At least. 50% of all exposed masonry shall be weathered surface.” Without formal .change order the Engineer required plaintiff to construct the exposed masonry of the wall entirely of weathered surface. This entailed extra expense and labor in searching for and transporting weathered stone. The amount of the extra cost, however, is not proved. All this work delayed the completion of the contract.
A large part of the excavation was through rock requiring drilling by jackhammer and air compressor. Plaintiff planned to do this work by night to make way for shovel operations. After the first night he was stopped by the Engineer, the reason being that night drilling disturbed the people of Hot Springs. Thereafter plaintiff was not allowed to drill at night. In an effort to make up for lost- time, the drilling being a slow process, the plaintiff arranged- for an extra compressor and jackhammers. The reasonable rental cost for the use of these for the period required was $1,140.00, which plaintiff incurred. The work was delayed but the extent is not shown by the record.'
There was some delay on the part of the defendant in setting stakes and some of the grade and slope stakes were set by plaintiff, with permission of the defendant’s representative. No material loss or delay is shown.
■The defendant was responsible for some delays in moving the shovel due to error in staking for a pipe and other changes required by the Engineer. This entailed some extra expense but the amount is not definitely proved.
The plaintiff removed 6,585 cubic yards of material from the borrow pit and used it in constructing the road. The' price therefor, according to the general schedule, was 75 . cents per cubic yard. Plaintiff has not been paid any part of .this sum. The excuse which defendant offers for nonpayment is that it had decided — after the work was over— that it was not necessary to take any material from the borrow pit. This defense cannot be sustained. According to the general schedule, which became a part of the contract, it was estimated that 13,400 cubic yards would be used from borrow pit. Defendant’s surveyors made contour and cross section surveys before and after the material had been *538 removed by tbe plaintiff. The material was used in embankments, shoulders and other fills with the full approval of defendant’s officer in charge. Excavation from the borrow pit was used for a time by the Engineer in calculating estimates for progress payments on the job. The plaintiff had even been required to deed to defendant the lot upon which the borrow pit was located and was told that he could not get progress payments until he had actually executed and delivered the deed. It is hardly necessary to add that he deeded the lot. This lot was purchased and paid for by plaintiff with the approval of the • Engineer after he had declined pursuant to the contract to let plaintiff secure material from any point within the park. The defendant even specified the part of the lot from which the material should be taken, designating and staking off the back part of the lot in order to protect the beauty of the park. This required a longer haul and additional work but plaintiff readily complied.
With this array of facts it would naturally be thought that this item of excavation would be paid for without question. In making the final estimates, however, upon which the last payment on the contract was made, the Engineer decided that plaintiff could have made all the fills to the contract limits from cuts without the use of any borrow. Although this was vigorously disputed by other witnesses, plaintiff was finally paid nothing for the material secured from the borrow pit. It had been included in the estimates made for progress payments, but was deducted in its entirety in making final settlement. On the Engineer’s estimates of amounts taken from the borrow pit plaintiff had paid his subcontractor for hauling such material.[2] In these circumstances it is unthinkable that plaintiff should not be paid for this work. He is entitled to recover for this item the sum of $4,938.75, the price specified in the contract.
The lot was transferred to and became the property of the Government. It was later, together with other property, by special act,[3] transferred to, became and is now a part *539 of the Hot Springs National Park, the act providing that payment therefor should be made out of money already appropriated. Despite this, plaintiff has not been paid for the lot thus taken.
Plaintiff claims that the value of the lot was greatly in excess of $300.00 and offered testimony to that effect. Such witnesses, however, admitted that there was little market at the time for such property. We find that the value of the lot at the time of the taking was $300.00, which plaintiff is entitled to recover.
There is a balance due plaintiff, in the sum of $559.50 for unclassified excavation for structures, on which plaintiff’s bid of $1.50 per cubic yard had been accepted.
Plaintiff was required to dig a ditch and waste the material therefrom into ravines and conceal it by a covering of leaves, which necessitated disposal of the material by hand shovel and wheelbarrow. He was paid for the excavation as unclassified, but for disposing of it afterward as specially directed he was not paid. There was no written ch’ánge order and no agreement as to price, and plaintiff is not entitled to recover on this item.
Plaintiff is entitled to recover for 206 cubic yards .of material which he was required to haul and hoist in order to fill in a space that had been left in the mountain above the new road, which space had been caused by an old road that had been cut into the mountain. He is entitled to recover 70 cents per cubic yard as the reasonable value of this work,[4] which is the amount also named in the specifications.
At Station 84, Main Line, the relocation of a drain pipe ordered by the Engineer had left a void and plaintiff was directed to fill this to the natural surface of the ground. It was off the road area and was not structurally necessary thereto. Plaintiff has not been paid for this work. He is entitled to recover for 296.3 cubic yards at the rate of 70 cents per cubic yard, the amount designated in the specifications, which is also the reasonable value of the work done.
There is a balance of $517.40 due plaintiff on rock embankment below Stations 30 and 39 for work done at the contract rate.
*540 The defendant, in making payment to plaintiff, deducted ■liquidated damages at the rate of $40.00 per day for 58 days’ delay, a total of $2,320.00. It is not possible from the evidence to apportion the number of days of delay for which the respective parties were responsible and hence the liquidated damages should not have been deducted.[5]
Several other claims covering various items were presented by plaintiff. Some of them have substantial merit, but the proof is not sufficient under the terms of the contract to justify recovery. In some instances there was no written change order. In others the actual damages were not proved. The facts in reference to them are set out in detail in the special findings of fact. They will not be repeated here.
Plaintiff’s willingness to cooperate was the occasion for his doing considerable extra work which he would not have been required to do without additional compensation under the strict terms of his contract. Unfortunately, his failure to comply with the method set out in the contract for protecting his rights, and his failure to produce records showing the ¡amount of his damage make it impossible to allow him for ¡such items.
.Plaintiff is entitled to recover the sum of $12,780.52.
It is so ordered.
Madden, Judge; Whitakee, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.

 Plumley v. United States, 226 U. S. 545, 6, 7; Hawkins v. United States, 96 U. S. 689, 696.

 Price v. Chicago, S. F. & C. Ry. Co., 38 Fed. 304, 307.

 49 Stat. 1516.

 Hunt v. United States, 257 U. S. 125.

 Sun Shipbuilding & Dry Dock Co. v. United States, 76 C. Cls., 154, 188.