# HUNT, EXECUTOR OF WEIGHEL, *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 38. Argued October 17, 1921.—Decided November 7, 1921.

1. *United States* v. *Utah, Nevada & California Stage Co.,* 199 U. S. 414, followed to the effect that a general stipulation in a mail-carriage contract obliging the contractor to perform new, additional or changed service without additional compensation, when ordered by the Postmaster General, does not authorize the exaction without pay of a heavy and expensive service not within the contemplation of the parties. P. 127.
2. Where a contract for mail-carriage was sublet, without filing a copy of the sub-contract under c. 116, 22 Stat. 54, or obtaining the written consent of the Postmaster General, required by § 2, c. 107, 20 Stat. 62, and the Government, though accepting the service performed by the subcontractor, neither had nor recognized any contractual relation except with his principal, treating the former as the agent of the latter, an action in the Court of Claims for extra service exacted by the Government over his protest, but performed by the subcontractor, was properly brought by and in the name of the contractor. P. 128.

55 Ct. Clms. 77, reversed.

APPEAL from a judgment of the Court of Claims, against the claimant, in an action to recover for extra mail-carriage service.

*Mr. A. C. Travis* and *Mr. Burt E. Barlow,* with whom *Mr. A. R. Serven* was on the brief, for appellant.

*Mr. Assistant Attorney General Lovett,* with whom *Mr. Frank Davis, Jr.,* and *Mr. Joseph Stewart,* Special Assistants to the Attorney General, and *Mr. Wm. D. Harris* were on the brief, for the United States.

MR. JUSTICE CLARKE delivered the opinion of the court.

This is an appeal from a judgment of the Court of Claims in favor of the United States.

On January 17, 1895, appellant's decedent, William Weighel, entered into a written contract with the United States for the transportation of mail on route No. 235,001, " being covered regulation wagon mail messenger, transfer, and mail station service," between designated points in the City of Chicago, Illinois, for the term of four years, commencing on July 1, 1895.

On February 6, 1895, Ezra J. Travis contracted in writing with Weighel to perform the entire contract for somewhat less than the latter was to receive from the Government. The Postmaster at Chicago and the Postmaster General were advised of this subletting, and for the entire four years during which Travis performed the contract he was recognized by the Post Office Department as a subcontractor, performing Weighel's obligations under the contract. The full amount stipulated for in the contract was paid by the Government, all payments being made to Weighel, who made settlement with Travis.

At the time Weighel bid on the route no mail service was being performed by contractors in Chicago to and from street cars, and the advertisement of the Post Office Department for proposals did not mention such service,

but, on the contrary, before he made his bid, Weighel was notified by the Postmaster at Chicago, who was authorized by the Postmaster General to give information to bidders, that the successful bidder would not be required to perform such service.

On November 14, 1895, about four months after Travis, as subcontractor, entered upon the performance of the contract, and again on May 12, 1896, and on February 27, 1897, and May 3, 1897, the Postmaster General issued orders requiring the contractor to perform specified mail service to and from street cars in Chicago. The Government claimed that this new service was within the scope of Weighel's contract, but he claimed that it was not, and performing it under protest he notified the Government that compensation therefor would be demanded. Travis performed all of the extra service for Weighel and the Court of Claims found that he was obliged to employ twenty-four men, four double vans and seven single wagons to perform the service which had previously been performed by four drivers and four single wagons, and that the reasonable value of the extra service imposed by the orders of the Postmaster General was $52,327.60.

This suit, brought by Weighel to recover the fair value of the extra service rendered, has since his death been prosecuted by his executor.

The Court of Claims decided that because Travis performed all of the extra service which was the subject of the suit, Weighel had no interest in the subject-matter of it and dismissed the petition.

We agree with the lower court that the contention of the Government cannot be allowed, that the extra service rendered was within the paragraph of the contract providing that the contractor is " to perform all new or additional or changed covered regulation wagon mail messenger, transfer, and mail station service that the Postmaster General may order in the City of Chicago, Illinois,

during the contract term, without additional compensation." This paragraph is in precisely the terms quoted and considered in *United States* v. *Utah, Nevada & California Stage Co.*, 199 U. S. 414, which on this point plainly rules the case before us and gives the appellant a right of action unless it is defeated by the fact that Travis instead of Weighel performed the service.

The finding of the Court of Claims is that while the Government had notice that Weighel had sublet his contract and while in practice it recognized Travis as a subcontractor, yet no copy of the subcontract was filed with the Department, as is provided for in c. 116, 22 Stat. 53, 54, but that, on the contrary, Travis certified to the Postmaster General that he did not intend that " the contract should be filed for recognition by the Department or as a lien against the pay of the contractor." Thus, while the Government accepted service from Travis, it consistently retained its contract relation with Weighel during the entire four years. Three of the four orders for the extra service were addressed to Weighel and the second of the four, which was addressed to Travis, probably by inadvertence, contained, as each of the others did, a requirement that the " contractor " should perform the service designated without additional pay, " in accordance with the terms of his contract." All payments were made to Weighel and it was from him that the protest came against being required to perform the extra service and the notice that extra pay would be demanded for it. While Travis was called a subcontractor, he was treated by all concerned throughout the entire transaction as if he were (and he seems to have so regarded himself) a mere agent, performing for Weighel. The Government did not have, and did not by any implication recognize, any contractual relations whatever with Travis, and if he had failed in performing it would not have had any right of action against him, for the subletting of such a contract

was forbidden by statute, except with the consent in writing of the Postmaster General, which was never given. (c. 107, 20 Stat. 62, § 2.)   Weighel was the only person legally bound to perform the original contract; it was from him that the Government demanded the extra service, and under the facts found by the lower court the obligation to pay for that service was to him, whether he performed it personally or through another.   The Government accepted performance of the extra service by Travis precisely as it accepted performance by him of the obligation under the original contract and the law requires payment to Weighel for the former as much as it required the payment which was made to him for the latter.

It results that the judgment of the Court of Claims must be reversed and the case remanded for further proceedings in conformity with this opinion.

*Reversed.*