**LUNDSTROM et al. v. UNITED STATES.**
Civil Action No. 332.

District Court, D. Oregon.
Dec. 1, 1941.

Cheney & Hutcheson, of Yakima, Wash., and S. J. Bischoff, of Portland, Ore., for plaintiffs.

Carl C. Donaugh, U. S. Atty., and Edward B. Twining, Asst. U. S. Atty., both of Portland, Ore., for defendant.

JAMES ALGER FEE, District Judge.

This action was brought by plaintiffs allegedly under the Tucker Act, 28 U.S.C.A. § 41(20), for the recovery of moneys claimed to be due under a contract. On May 18, 1938, the District Quartermaster, Civilian Conservation Corps at Vancouver, Washington, mailed to plaintiffs and others a written invitation for bids for "Commercial hauling of C. C. C. Camp Buildings" from various places to other localities, all in Oregon. There is a note to the specification: "The above supplies are composed of about 75 Ton of Lumber (Portable Knocked Down buildings and building material) and about 200 Ton of Lumber for each shipment." Plaintiffs' bid was accepted and a standard form government contract was prepared incorporating the invitation to bidders, instructions to bidders, the bid and the acceptance and the specifications above noted. The materials were hauled. Plaintiffs executed a series of invoices, one for each delivery, properly certified under the terms of the instructions to bidders contained in the contract, and upon this basis payment was made to the plaintiffs of the sums which the United States claims constituted payment in full.

The main controversy arises over the fact that the administrative bulletin of the Adjutant General relating to the transfer of Civilian Conservation Corps houses classified as "portable knocked down houses" only the panels thereof which had a door or window therein, and classified as lumber the same type of panel which had no such addition. This classification is utterly arbitrary and unreasonable and has no basis whatever in ordinary trade acceptance of "lumber" as distinguished from "knocked down houses".

However, the United States had a right to contract for transportation even under unreasonable classifications. If the bidder miscalculated the price, he must, of course, bear the loss.[1] Such a classification must, however, have been incorporated in the contract itself before it became binding upon the bidder.

In the note to the specification, which is the only reference, there is a distinction between "Lumber (Portable Knocked Down buildings and building material)" and "lumber". On the face of this alone, the plaintiffs had a right to expect the panels, whether containing a window or not, were part of the portable knocked down buildings or building material and that "lumber" would be loose boards, in accordance with the general meaning of words.

The contract contains no reference to the administrative bulletin and no trade usage was shown of construction of the word "lumber" in this way. In fact, the testimony shows that the word is never so applied in the trade usage.

The plaintiffs were, of course, not required to search through all the directives issued by the Adjutant General or

---

[1] Brawley v. United States, 96 U.S. 168, 173, 24 L.Ed. 622.

Quartermaster General in order to find some arbitrary interpretation of plain language which by reason of its quaintness appealed to some official. The contracts of the United States with one of its citizens are construed according to the ordinary rules of contracts which apply between individuals.[2] Here the United States entered a contract with a transportation company which had its own schedules on file which do not make the distinction now contended for by the government.[3]

Nor did the fact that the contract contained the clause, "It is the duty of each prospective bidder to familiarize himself with all the terms and conditions of this proposal and satisfy himself completely before submitting his bid", bind the plaintiffs to discover that the District Quartermaster was going to adopt this unique classification.[4]

It is also said in paragraph 15 of the "Special Instructions to Bidders", made part of the contract: "Disputes: Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer, subject to written appeal by the contractor within thirty (30) days to the head of the department concerned or his duly authorized representative whose decision shall be final and conclusive upon the parties hereto. In the meantime the contractor shall diligently proceed with performance."

The plaintiffs did not act under this clause, although after performance was commenced the attitude of the District Quartermaster was well known to them. However, the dispute was not one of fact. The controversy is one over interpretation of the contract.

The evidence shows there was considerable pressure put upon the plaintiffs to complete the contract by the District Quartermaster under this and other clauses of the contract and there was a threat to withhold payments under other disconnected contracts. It would have been a vain thing to have him act as arbitrator when he had specifically announced his construction, and furthermore, threatened them with penalties on this and other contracts.[5] This clause is included in the contract not for the purpose of finally settling such a dispute, but for the purpose of preventing delay in the work, as the last sentence shows.

The court finds that during the period of the work the contractor consistently protested the classification but performed the work under pressure. The evidence shows that a great deal more equipment was required than contemplated by the written contract, and that the District Quartermaster was so advised.

Finally, the plaintiffs did make out vouchers with certificates for each load in which the price named by the District Quartermaster was set down as "correct and just". A condition of a contract may be waived, a right for damages for breach thereof cannot be.[6] It is not an estoppel against their claiming the amount which may be justly due under the contract. There was no way in which otherwise any

---

[2] Reading Steel Casting Co. v. United States, 268 U.S. 186, 188, 45 S.Ct. 469, 69 L.Ed. 907; Hollerbach v. United States, 233 U.S. 165, 171, 34 S.Ct. 553, 58 L.Ed. 898; United States v. Smith, 94 U.S. 214, 24 L.Ed. 115; United States v. Seaboard Air Line Ry. Co., 4 Cir., 22 F.2d 113, 114.

[3] St. Louis, Brownsville & Mexico Ry. Co. v. United States, 268 U.S. 169, 173, 45 S.Ct. 472, 69 L.Ed. 472.

[4] "We do not think, when the statement was thus unequivocal, and the document was prepared for the guidance of bidders for government service, that the general statement that the contractor must investigate for himself, and of nonresponsibility for mistakes, would require an independent investigation of a fact which the government had left in no doubt." United States v. Utah, Nevada & California Stage Company, 199 U.S. 414, 424, 425, 26 S.Ct. 69, 73, 50 L.Ed. 251.

[5] "The contention overlooks the view of the contract entertained by Colonel Lydecker and the uselessness of soliciting or expecting any change by him. His conduct, to use counsel's description, 'though perhaps without malice or bad faith in the tortious sense', was repellent of appeal or of any alternative but submission with its consequences. And we think, against the explicit declaration of the contract of the material to be excavated and its price." United States v. L. P. & J. A. Smith, 256 U.S. 11, 16, 41 S.Ct. 413, 414, 65 L.Ed. 808.

[6] "No action of these officials can bar the right of a claimant to have the Court of Claims determine whether he is entitled to recover under a contract with the government." St. Louis, Brownsville & Mexico Ry. Co. v. United States, supra, 268 U.S. at page 174, 45 S.Ct. at page 474, 69 L.Ed. 472.

payment could be obtained. The District Quartermaster compelled performance according to his interpretation. Everyone knows if one who has money due from the United States does not conform meticulously to the regulations as to vouchers no money will be paid. This goes to the extent at times of submitting a certificate that payment has been received, whereas in fact payment will not be made until the certificate is in the hands of the official. Here a certification that the statement is "correct and just" should not prevent plaintiffs from receiving payment for the work actually done. The United States did not rely upon such vouchers as indicating that no claim for extras would be made. The money paid was certainly justly owing. The question here is whether the United States does not owe more.

This specific question does not appear to have been raised in the decided cases which have been cited to the court. However, there are many cases where a contractor has been paid moneys for performance of a contract and has been allowed extra compensation under the contract for extra service required thereunder.[7]

■ The demand of the United States was that these knocked down buildings be transported as "lumber". This was a breach of the contract, since no "lumber" was tendered. This feature differentiates a case where the contractor furnished more goods under the contract than the terms called for.[8]

■ Jurisdictional questions are usually disposed of at the outset but in this case it has been reserved in order to cover other questions. Now it is clear from the previous discussion that this suit is one on the contract. The contract was for hauling. This hauling was performed. Part of it was for 75 ton of knocked down buildings and building materials. Under this the United States required the hauling of a vast increase in quantity and did not require the hauling of any lumber at all. The United States had the right under the contract to increase the quantity of buildings and building materials to the extent of twenty-five per cent.[9] Above that it must pay the reasonable value as an extra under the contract.[10] The mere fact that the amount is unliquidated does not prevent the claim from being one on contract.[11]

Further proof of damages must be had.

Findings and conclusions may be prepared in accordance with this opinion.

---

[7] "The Hunt case [Hunt, Executor of Weighel, v. United States, 257 U.S. 125, 42 S.Ct. 5, 66 L.Ed. 163], was not a stronger case than this, and in the Stage Company Case, [United States v. Utah, Nevada & California Stage Company, supra,] the right to recover for work not properly and legally included in the contract was not even questioned, although in both cases the work demanded was done and periodical payments accepted." Freund v. United States, 260 U.S. 60, 69, 43 S.Ct. 70, 74, 67 L.Ed. 131.

[8] See Willard, Sutherland & Company v. United States, 262 U.S. 489, 43 S.Ct. 592, 67 L.Ed. 1086.

[9] See Early & Daniel Company v. United States, 271 U.S. 140, 46 S.Ct. 457, 70 L.Ed. 874. "The government, in its advertisement, had stated the probable additional annual mileage at 6,718.40 miles. This may be presumed to have been a fair and impartial estimate, made for the benefit of those with whom the government was about to contract, notwithstanding they were warned that it was not conclusive. * * * In this instance we think the limit of reasonable requirement under the new and additional service clause was exceeded, and the service required cannot be held to be within the terms of the contract." United States v. Utah, Nevada & California Stage Company, supra, 199 U.S. 424, 26 S.Ct. 73, 50 L.Ed. 251.

[10] United States v. Atlantic Dredging Co., 253 U.S. 1, 12, 40 S.Ct. 423, 64 L.Ed. 735; Freund v. United States, supra; United States v. Utah, Nevada & California Stage Company, supra; Hunt v. United States, supra.

[11] In Freund v. United States, supra, 260 U.S. 70, 43 S.Ct. 74, 67 L.Ed. 131, the direction was "to find the value of the services rendered by appellants on the substituted or restated route including a fair profit, and to enter judgment for the balance found due."