JUDITH ANN TRIPP (MERCER) v. EUGENE PATE, M.D., KINSTON BONE AND JOINT CLINIC, P.A., AND LENOIR MEMORIAL HOSPITAL, INC.

No. 808SC314

(Filed 4 November 1980)

1. Trial § 3– motion for continuance – denial no abuse of discretion

    The trial judge did not abuse his discretion in denying plaintiff's motion for continuance made on the ground that her attorney had been unable to prepare adequately for trial due to a schedule conflict, since the trial judge, in denying plaintiff's motion, noted that plaintiff's attorney no longer had any schedule conflict and that he had over a year to prepare her case for trial.

2. Appeal and Error § 30.1– objections to evidence — timeliness

    Plaintiff's objection to certain portions of defendant's testimony was not timely where she did not object at the time the testimony was offered but instead moved to strike the testimony at the conclusion of all her evidence.

3. Hospitals § 3.3– malpractice alleged – failure to show negligence of hospital

    In a malpractice action to recover damages for injury resulting from an alleged post-operative infection, the trial court properly directed verdict in favor of defendant hospital where plaintiff alleged that the hospital was negligent in not reporting promptly the results of certain tests ordered by her doctors after her surgery, but plaintiff failed to present any evidence of

the standard of care for a hospital in Kinston or similar communities regarding time necessary to report test results, and where plaintiff argued that she presented evidence that the hospital was negligent by failing to provide a sterile atmosphere in its operating room, but she failed to present any evidence of lack of sterile conditions in defendant hospital's operating room.

**4. Physicians, Surgeons and Allied Professions § 16.1– malpractice of physician alleged – insufficiency of evidence of negligence**

In a malpractice action to recover damages for injury resulting from an alleged post-operative infection, the trial court properly directed verdict for defendant doctor where plaintiff argued (1) that defendant negligently failed to inform her of the possible consequences of the proposed surgery, but plaintiff testified that she would have had the surgery even if she had been so informed; (2) that she presented evidence that defendant negligently abandoned her after surgery, but the evidence disclosed that defendant left plaintiff in the care of his two associates who did in fact treat and care for plaintiff; and (3) that defendant and his associates, acting as his agents in his absence, failed to diagnose properly and treat her condition subsequent to surgery, but there was a total absence of expert or other testimony in the case that the medical care plaintiff received was not in conformity with approved medical practices and treatment in Kinston or similar communities.

APPEAL by plaintiff from *Rouse, Judge*. Judgment entered 26 October 1979 in Superior Court, GREENE County. Heard in the Court of Appeals 7 October 1980.

Plaintiff brought this action for malpractice against defendants seeking to recover damages for injury resulting from an alleged post-operative infection in her right knee.

Plaintiff's evidence at trial tended to show that plaintiff injured her knee in a basketball game and sought treatment from defendant Dr. Pate who arranged to have her admitted at defendant hospital located in Kinston, North Carolina, for exploratory surgery. After performing the surgery, Dr. Pate left town on vacation for several days and arranged for his associates, Drs. Spigner and McGirt, to attend plaintiff. During Dr. Pate's absence, plaintiff began running an elevated body temperature and complained of pain in her leg. Plaintiff's white blood count increased and eventually she broke out in a red rash. Dr. Pate resumed treatment of plaintiff upon his return to Kinston. After other physicians were consulted, plaintiff's condition was diagnosed as a drug allergy and certain medications were discontinued. Plaintiff's condition appeared to improve, but plaintiff continued to suffer from pain, stiffness and swell-

ing. Several months later plaintiff's condition was diagnosed as a post-operative infection of the knee joint, resulting in a permanently stiff knee. Other pertinent facts are stated in the body of the opinion.

Plaintiff presented her case through the testimony of defendant Dr. Pate, plaintiff, and plaintiff's parents and through the depositions of Dr. Frank H. Bassett, III and Dr. Thomas Dameron.

At the conclusion of plaintiff's evidence, defendants moved for and were granted directed verdicts. Plaintiff appealed.

*Farris, Thomas & Farris, by Robert A. Farris, Jr. and Thomas J. Farris, for the plaintiff-appellant.*

*Ward and Smith, by Thomas E. Harris, for the defendants-appellees.*

MARTIN (Robert M.), Judge.

[1] By her first assignment of error plaintiff contends the trial court erred in denying certain motions. First, plaintiff argues the trial court erred in denying her pre-trial motion to continue. The granting of a continuance is within the discretion of the trial court judge and absent a manifest abuse of discretion his ruling is not reviewable on appeal. *Johnson v. Johnson*, 14 N.C. App. 40, 187 S.E. 2d 420 (1972); 12 Strong's N.C. Index 3d *Trial* § 3.1 (1978). In the case *sub judice* the basis for plaintiff's motion was that her attorney had been unable to adequately prepare for trial due to a schedule conflict. In denying plaintiff's motion, Judge Rouse noted that plaintiff's attorney no longer had any schedule conflict and that he had over a year to prepare her case for trial. Clearly Judge Rouse did not abuse his discretion in denying plaintiff's motion for a continuance.

[2] Second, plaintiff argues the trial court erred in denying her motion to strike and suppress portions of Dr. Pate's testimony which plaintiff contends were contrary to prior statements in his answers to written interrogatories and in his deposition. Plaintiff contends defendant Pate was under a duty to amend his responses pursuant to Rule 26(e), N.C. Rules Civ. Proc. Without deciding whether defendant was under such a duty, we must overrule this assignment of error. Plaintiff's counsel did not object to Dr. Pate's testimony at the time it was offered, but

rather elected to proceed with the presentation of her evidence by offering additional proof through five other witnesses. At the conclusion of all her evidence, plaintiff moved the trial court to strike the testimony of Dr. Pate as to his diagnosis of plaintiff's condition. Such motion was not timely. If it was to have been made properly, it should have been made at the time the testimony was offered. "An objection is timely only when made as soon as the potential objector has the opportunity to learn that the evidence is objectionable, unless there is some specific reason for a postponement. Unless prompt objection is made, the opponent will be held to have waived it." 1 Stansbury's N.C. Evidence § 27, at 69 (Brandis rev. 1973).

Plaintiff by her second assignment of error contends the trial court erred in granting defendants' motions for directed verdicts at the conclusion of plaintiff's evidence. N.C. Gen. Stat. § 90-21.12 sets forth the statutory standard of care a plaintiff must establish in medical malpractice actions as follows:

> In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

In malpractice cases, plaintiff must demonstrate by the testimony of a qualified expert that the treatment administered by defendant was in negligent violation of the accepted standard of medical care in the same or similar communities *and* that defendant's treatment proximately caused plaintiff's injury. *Ballenger v. Crowell*, 38 N.C. App. 50, 247 S.E. 2d 287 (1978). Plaintiff argues she presented evidence showing violations of the standards of care owed her by both defendants, the hospital and Dr. Pate, and that the alleged violations were proximate causes of her injury. The question presented by a defendant's motion for a directed verdict is whether all the evidence, which supports the plaintiff's claim, when taken as true, considered in

Tripp v. Pate

the light most favorable to the plaintiff and given the benefit of every reasonable inference in the plaintiff's favor which may legitimately be drawn therefrom is sufficient for submission to the jury. Contradictions, conflicts and inconsistencies in the evidence must be resolved in plaintiff's favor in determining the sufficiency of the evidence to withstand a motion for directed verdict. *Rappaport v. Days Inn*, 296 N.C. 382, 250 S.E. 2d 245 (1979). With these general principles in mind, we will discuss this assignment separately as to each defendant.

## I. The Hospital

[3] Plaintiff offers two arguments to support her contention that the trial court erred in granting a directed verdict in the defendant hospital's favor. We believe neither argument has merit.

First, plaintiff argues she presented evidence the hospital was negligent in not reporting promptly the results of certain tests ordered by plaintiff's doctors after her surgery, thereby causing a delay in the diagnosis of plaintiff's condition. In order to withstand a motion for directed verdict on this issue, however, plaintiff was required by N.C. Gen. Stat. § 90-21.12, *supra,* to offer some evidence that the care of the defendant hospital was not in accordance with the standards of practice among *other hospitals* in the same or similar communities. Plaintiff failed to present any evidence of the standard of care for a *hospital* in Kinston or similar communities regarding time necessary to report test results.

Second, plaintiff argues she presented evidence the hospital was negligent by failing to provide a sterile atmosphere in its operating room. We disagree. Plaintiff presented ample expert medical testimony at trial that the most opportune time for infection to have become established in her knee was during the time the incision was open in the operating room. Plaintiff, however, failed to present any evidence of lack of sterile conditions in defendant hospital's operating room. Liability in malpractice cases must be based on proof of actionable negligence. *Watson v. Clutts*, 262 N.C. 153, 136 S.E. 2d 617 (1964).

For the above-stated reasons, we affirm the trial court's granting of a directed verdict in favor of defendant hospital.

## II. Dr. Pate

[4]  Plaintiff offers three arguments to support her contention that the trial court erred in granting a directed verdict in defendant Pate's favor. In our opinion, none of these arguments have merit.

First, plaintiff argues Dr. Pate negligently failed to inform her of the possible consequences of the proposed surgery and therefore, although plaintiff signed consent forms agreeing to the surgery, she did not give an informed consent to the operation. Plaintiff testified at trial that she did not know an infection could have resulted from the surgery and that Dr. Pate had failed to inform her an infection might have resulted. Plaintiff also testified, however, that

> I was very anxious to have this surgery done so I could get better and play basketball. The people that I knew that had surgery were back playing ball after a week. No one, nurses, doctors advised me of the dangers or risks that surgery entailed, *if they had it would not have changed my mind*. (Emphasis added.)

Thus plaintiff herself established that Dr. Pate's alleged failure to inform her of the risks inherent in the surgery was not a proximate cause of her injury. In malpractice cases, "[t]he plaintiff must not only show that the defendant physician or surgeon was negligent, but also that the alleged negligence was the proximate cause or one of the proximate causes of the damage . . . ." 10 Strong's N.C. Index 3d *Physicians, Surgeons, and Allied Professions* § 20 at 187 (1977).

Second, plaintiff argues she presented evidence that Dr. Pate negligently abandoned her after surgery. We disagree. After he performed the surgery, Dr. Pate left plaintiff in the care of his two associates for a period of five days while he travelled out of town. The record discloses that prior to leaving the hospital, Dr. Pate ordered post-operative care, medication, special diet and chest x-rays for plaintiff. In addition, Dr. Pate arranged for his associates to care for plaintiff in his absence. Dr. Pate testified:

> I told them [his associates] I was going to operate on her and they understood that they were to take care of her

while I was gone with full authority. Before I left town I told them she was in the recovery room and appeared to be doing well and they were to see her that night, the 12th, in making rounds. I left my medical records available to them and a handwritten note telling what had been done and what the procedure was.

Dr. Pate further testified that in his opinion his associates were competent to render whatever medical care plaintiff may have needed, that it was not unusual for them to "cover" for each other when one was out of town and that there was no medical reason why the surgery should not have been performed if he was leaving town subsequently. All of the other expert medical testimony at trial was to the effect that this was a regular practice among surgeons in communities similar to Kinston. Plaintiff testified at trial

> If Dr. Pate left town, I would have been equally happy to have Dr. McGirt or Spigner treat me. When Dr. Pate left town, it didn't make me unhappy because I knew I would be treated by Dr. McGirt or Spigner. It wouldn't have made any difference if Dr. Pate had told me he was going out of town. I would have gone ahead and had the surgery done.

The record discloses that Dr. Pate's associates did in fact treat and care for plaintiff in Dr. Pate's absence.

> The surgeon's duty to his patient does not, of course, end with the termination of the operation itself, nothing else appearing ... [T]he surgeon "must not only use reasonable and ordinary care, skill and diligence in its performance, but, in the subsequent treatment of the case, he must also give, *or see that the patient is given,* such attention as the necessity of the case demands." (Emphasis added.)

*Starnes v. Taylor,* 272 N.C. 386, 394, 158 S.E. 2d 339, 345 (1968).

Defendant cites *Groce v. Myers,* 224 N.C. 165, 29 S.E. 2d 553 (1944) in support of her argument that Dr. Pate abandoned her subsequent to the surgery. *Groce* involved a factual situation distinguishable from the case *sub judice.* In *Groce* the plaintiff sustained a broken arm while she was a patient in a hospital under the defendant doctor's care. The defendant refused to

treat the plaintiff's broken arm and called her father to remove the plaintiff from the hospital. The court in *Groce* held that the plaintiff's evidence on the issue of abandonment was sufficient to go to the jury.

In the case *sub judice* plaintiff was not left unattended after her surgery. Dr. Pate made every effort to provide medical care for plaintiff in his absence. The cases of *Nash v. Royster,* 189 N.C. 408, 127 S.E. 356 (1925) and *Wilson v. Hospital,* 232 N.C. 362, 61 S.E. 2d 102 (1950) stand for the proposition that where a surgeon has performed surgery upon his patient and left her under the care of another surgeon for further treatment, the substituted surgeon is the agent of the former in the performance of necessary services to the patient which the former had contracted to render. Thus it is clear from an examination of North Carolina case law that as a matter of law, Dr. Pate did not negligently abandon plaintiff. He fulfilled his duty to plaintiff as set out in *Starnes, supra,* to see that his patient was given such attention as the necessity of the case demanded, by making his associates his agents in the performance of necessary services to plaintiff subsequent to her surgery.

Third, plaintiff argues that she presented evidence that Dr. Pate and his associates, acting as his agents in his absence, failed to properly diagnose and treat her condition subsequent to the surgery.

> In an action for medical malpractice the burden of proof on the plaintiff is heavy. In order to recover for personal injury arising out of the furnishing of health care, the plaintiff must demonstrate by the testimony of a qualified expert that the care provided by defendant was not in accordance with the accepted standard of care in the community. *Ballenger v. Crowell,* 38 N.C. App. 50, 247 S.E. 2d 287 (1978); N.C. Gen. Stat. § 90-21.12.

*Vassey v. Burch,* 45 N.C. App. 222, 225, 262 S.E. 2d 865, 867, *rev'd on other grounds,* 301 N.C. 68, 269 S.E. 2d 137 (1980).

> In cases of diseases or injuries "with respect to which a layman can have no knowledge at all, the court and the jury must be dependent on expert evidence. There can be no other guide, and, where want of skill or attention is not thus shown by expert evidence applied to the facts, there is no

evidence of it proper to be submitted to the jury." *Smith v. Wharton,* 199 N.C. 246, 154 S.E. 12.

*Ballance v. Wentz,* 286 N.C. 294, 302, 210 S.E. 2d 390, 395 (1974).

There is a total absence of expert or other testimony in the case *sub judice* that the medical care plaintiff received was not in conformity with approved medical practices and treatment in Kinston or similar communities. Herein lies the fatal flaw in plaintiff's case against Dr. Pate. Dr. Bassett stated he had no opinion as to whether plaintiff received the usual and customary treatment for a patient in a community similar to Kinston. Dr. Dameron gave no opinion on the issue, merely stating that he would have suspected an infection.

When tested by the foregoing rules, the evidence of actionable negligence on the part of either Dr. Pate or the hospital was insufficient to be submitted to the jury. Hence Judge Rouse was required to grant defendants' motions for directed verdicts.

Discussion of defendants-appellees' assignment of error is unnecessary since we affirm the trial court's entry of the directed verdict.

Affirmed.

Judges Hedrick and Martin (Harry C.) concur.