METRIC CONSTRUCTORS, INC., Plaintiff v. HAWKER SIDDELEY POWER ENGINEERING, INC., d/b/a HAWKER SIDDELEY POWER ENG., INC. and PANDA ROSEMARY CORPORATION, Defendants

No. COA95-250

(Filed 20 February 1996)

**1. Contracts § 114 (NCI4th)— second-tier subcontractor's damages as subset of first-tier subcontractor's damages**

Even though a second-tier subcontractor had no privity with the general contractor and could not sue the general contractor for damages from work delays, plaintiff first-tier subcontractor could include the second-tier subcontractor's damages as a subset of its own damages in an action against the general contractor for breach of contract.

**Am Jur 2d, Damages §§ 69-73.**

METRIC CONSTRUCTORS, INC. v. HAWKER SIDDELEY POWER ENGINEERING

[121 N.C. App. 530 (1996)]

2. **Contracts § 163 (NCI4th)— delay damages—damages anticipated by parties—no special damages**

Plaintiff first-tier subcontractor's duration-related damages for overtime premium costs, loss of productivity, extended overhead, and loss of bonus allegedly suffered because defendant general contractor failed to deliver its promised performance from the outset of a power plant construction project were appropriately characterized as general damages, and the trial court therefore did not err in failing to instruct on special damages, where the contract provisions themselves were a clear indication that defendant recognized that delay damages might be incurred by one or more of the parties involved in constructing the power plant.

**Am Jur 2d, Damages §§ 98-108.**

3. **Contracts § 150 (NCI4th)— requested instruction on compromise and settlement—instruction given in substance— no meeting of minds—failure to instruct harmless error**

The trial court's instruction on accord and satisfaction conveyed the substance of defendants' requested instruction on compromise and settlement, but even if there had been further instructions on that issue, it is unlikely that a different result would have been reached and any error was therefore harmless where the evidence supported a jury finding that there was no meeting of the minds between the parties as to any substituted agreement.

**Am Jur 2d, Trial §§ 1478-1485.**

**Verdict-urging instructions in civil case commenting on weight of majority view or authorizing compromise. 41 ALR3d 845.**

Judge WYNN concurring in part and dissenting in part.

Appeal by defendants from order and judgment entered 31 March 1994 by Judge Richard B. Allsbrook in Halifax County Superior Court. Heard in the Court of Appeals 4 December 1995.

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Dewey W. Wells, Timothy G. Barber, and Steven D. Gardner, for plaintiff-appellee.*

*Erwin and Bernhardt, P.A., by Fenton T. Erwin, Jr. and J. Neal Rodgers; and Kleinberg, Kaplan, Wolff & Cohen, P.C., by Norris D. Wolff, for defendants-appellants.*

WALKER, Judge.

Defendant-appellant Panda Rosemary Corporation (Panda) owns a leasehold interest in certain real property in Roanoke Rapids, North Carolina. The lessor and record owner of the property is The Bibb Company (Bibb). Panda hired defendant-appellant Hawker Siddeley Power Engineering, Inc. (HSPE), a British company, to design and build a cogeneration power plant on the property. After completion, Panda was to own and operate the plant pursuant to its lease with Bibb. HSPE, the general contractor, subcontracted with plaintiff-appellee Metric Constructors, Inc. (Metric) for construction of the plant. Metric subcontracted with a wholly-owned subsidiary, Electrical & Special Systems, Inc. (ESSI), for specialized electrical work.

The project was "design build" or "fast track," meaning that HSPE had not completed all the designs for the plant prior to the commencement of construction. Pursuant to its contract with Metric, HSPE was responsible for engineering design drawings and procurement of major equipment items. Due to commitments made by Panda, Metric was informed that the project had an inflexible completion date of 30 October 1990. In contract negotiations and in the contract, HSPE promised to issue drawings at a pace that would allow Metric to finish its work on time. The contract provided that Metric would receive a bonus of $9,000 a day for early completion.

According to Metric's evidence, HSPE failed to deliver its promised performance from the outset of the project, issuing drawings weeks or even months after the issue dates it had given Metric. Some drawings were issued and then revised, requiring Metric to demolish its work and begin anew. HSPE's conduct forced Metric to expend considerable sums to complete the project on schedule. However, HSPE refused to pay Metric for the cost overruns and extra work caused by the late performance.

**METRIC CONSTRUCTORS, INC. v. HAWKER SIDDELEY POWER ENGINEERING**

[121 N.C. App. 530 (1996)]

In an effort to recover its expenses and losses incurred as a result of HSPE's conduct, Metric filed a lien on the plant owned by Panda and brought suit to enforce the lien. Defendants answered, and HSPE counterclaimed alleging that Metric had breached its obligations under the contract between those parties. The case was tried before a jury. Metric's evidence consisted of the testimony of nine people who were actively involved in the Panda project and an expert in construction scheduling. Through these witnesses and voluminous documentation, Metric asserted that it had suffered damages in the amount of $6,615,863. HSPE's evidence consisted of the testimony of four witnesses, only one of whom was directly involved with the Panda project. The jury awarded Metric $6,615,863 in damages against HSPE for breach of contract and denied HSPE's counterclaim. Thereafter, the trial court entered judgment in accordance with the verdict and awarded interest on the judgment. Defendants filed motions for judgment notwithstanding the verdict (JNOV), amendment of the order, and a new trial. The trial court denied the motions.

I.

[1] HSPE first assigns as error the trial court's denial of its motions for directed verdict and JNOV as to Metric's claims made on behalf of ESSI. The question presented by a defendant's motion for a directed verdict is whether all the evidence supporting the plaintiff's claim, taken as true, considered in the light most favorable to the plaintiff, and given the benefit of every reasonable inference in the plaintiff's favor, is sufficient for submission to the jury. *Tripp v. Pate*, 49 N.C. App. 329, 332-33, 271 S.E.2d 407, 409 (1980). If there is more than a scintilla of evidence supporting each element of the plaintiff's claim, the motion should be denied. *Broyhill v. Coppage*, 79 N.C. App. 221, 226, 339 S.E.2d 32, 36 (1986). A motion for JNOV is in effect a renewal of a previous motion for directed verdict, and the same rules regarding sufficiency of the evidence apply. *Henderson v. Traditional Log Homes*, 70 N.C. App. 303, 306, 319 S.E.2d 290, 292, *review denied*, 312 N.C. 622, 323 S.E.2d 923 (1984).

HSPE argues that Metric lacks standing to assert a claim on behalf of ESSI, relying on the provisions of Article 4 of the contract between HSPE and Metric:

4.1 All proposed Lower Tier Subcontracts must be submitted to HSPE for written approval. If so approved, Subcontractor shall bind all Lower Tier Subcontractors to the provisions of the Subcontract Documents.

4.2 Neither this Subcontract nor any Lower Tier Subcontract shall create any contractual relationship between any Lower Tier Subcontractor and HSPE nor any obligation of HSPE to Lower Tier Subcontractor.

4.3 Notwithstanding the existence of any Lower Tier Subcontract, Subcontractor shall be liable to HSPE for performance hereunder as if no Lower Tier Subcontractor exists.

Defendants assert that under the terms of section 4.2, HSPE had no contractual obligations to ESSI, a lower tier subcontractor, and therefore cannot be liable to ESSI for damages to ESSI caused by breach of HSPE's contract with Metric. In support of this assertion, defendants cite the rule enunciated in *Warren Brothers Co. v. N.C. Dept. of Transportation*, 64 N.C. App. 598, 307 S.E.2d 836 (1983) that a subcontractor may not do indirectly through a plaintiff higher tier contractor what it cannot do directly by a suit against the defendant. *Id.* at 600, 307 S.E.2d at 838. Defendants argue that since ESSI cannot bring a claim directly against HSPE, it cannot present a claim indirectly through Metric. We agree that the contract between HSPE and Metric does not create any privity between HSPE and ESSI and that ESSI may not sue HSPE directly. Nonetheless, we hold that Metric may recover ESSI's losses on the Panda project as part of Metric's contract damages.

In *Bolton Corp. v. T. A. Loving Co.*, 94 N.C. App. 392, 380 S.E.2d 796 (1989) (*Bolton I*), *review denied*, 325 N.C. 545, 385 S.E.2d 496, this Court allowed the plaintiff, a prime contractor in the construction of a building on a state university campus, to recover from another prime contractor the damages incurred by the plaintiff's subcontractor. *Id.* at 409, 380 S.E.2d at 807. Although the contract between the plaintiff and its subcontractor provided that no contractual relationship existed between the subcontractor and the owner, the Court nonetheless stated that "[a] contractor may recover from an owner its subcontractor's 'extra costs and services wrongfully demanded' when the subcontractor is not in privity with the owner and could not recover directly." *Id.* at 407, 380 S.E.2d at 806 (*quoting United States v. Blair*, 321 U.S. 730, 737, 88 L. Ed. 1039, 1045 (1944)). The Court explained the rationale for this rule:

"The government [owner] did not have, and did not by any implication recognize, any contractual relations whatever with [subcontractor], and if he had failed in performing it would not have had any right of action against him . . . . [Contractor] was the only

person legally bound to perform the original contract; it was from him that the government demanded the extra service, and . . . the obligation to pay for that service was to him, whether he performed it personally or through another."

*Bolton I*, 94 N.C. App. at 407-08, 380 S.E.2d at 806 (*quoting Hunt v. United States*, 257 U.S. 125, 128-29, 66 L. Ed. 163, 165 (1921)).

The *Bolton I* court recognized the general validity of the *Warren* rule that a subcontractor cannot do indirectly through a higher tier contractor what it cannot do directly against the owner. However, the Court found the *Warren* rule was inapplicable to the circumstances in *Bolton I* because the contract in *Bolton I* made each contractor financially responsible for undue delay caused by him to other contractors and because each contractor was fully responsible for the acts of its subcontractors. Thus, "[i]f a subcontractor were to cause injury to a contractor other than its prime, the other contractor would have an action in contract against the subcontractor's prime." *Id.* at 408-09, 380 S.E.2d at 806-07. The Court concluded, "The logic set out in *Hunt* is applicable here, and we hold that the contract intends for any damages to a subcontractor to be a subset of its prime's damages." *Id.* at 409, 380 S.E.2d at 807.

We acknowledge that *Bolton I* is factually different from the present case in that it involved a government contract with multiple primes rather than a private contract between a general contractor and a first tier subcontractor. However, the rationale for the holding in *Bolton I* is applicable to the present case. In *Bolton I*, the subcontractor was not a named plaintiff, nor was the contractor presenting a claim on behalf of the subcontractor. Rather, the prime contractor was including the subcontractor's damages *as a subset of its own damages*. Obviously, the *Bolton I* court recognized that unless the contractor was permitted to include the subcontractor's claim as part of its own, there would be no means of recovering the damages incurred by the subcontractor.

In the present case, HSPE's conduct required extra work from ESSI. ESSI, which had no direct claim against HSPE for damages caused by HSPE's delays, presented its claim for damages to Metric. Under *Hunt* and *Bolton I*, Metric had standing to recover ESSI's damages as a subset of its own contract damages against HSPE. The record reveals that ESSI was not a party to the action, and no issue was presented to the jury regarding any claim by ESSI.

Defendants nonetheless urge us to deny Metric standing to recover ESSI's damages, relying on *APAC-Carolina, Inc. v. Greensboro-High Point Airport Authority,* 110 N.C. App. 664, 431 S.E.2d 508, *review denied,* 335 N.C. 171, 438 S.E.2d 197 (1993). The Court in *APAC*, relying on *Warren, supra,* held that APAC, a prime contractor, did not have standing to bring the claims of its subcontractor against the owner since the subcontractor, by the terms of the contract, had no direct claim against the owner. *Id.* at 671, 431 S.E.2d at 512. The *APAC* court characterized as dicta the portion of *Bolton I* which cited *United States v. Blair* for the proposition that a contractor could recover its subcontractor's extra costs from the owner when the subcontractor was not in privity with the owner and could not recover directly. *Id.* at 671, 431 S.E.2d at 511.

*APAC* is readily distinguishable from the present case. In *APAC*, the subcontractor, United Sprinkler, Inc., was a party plaintiff and was essentially trying to append to APAC's claim against the owner its own separate claim which it could not bring directly. As we have noted, ESSI was never a plaintiff in the instant case and is not now trying to bring its own claim against HSPE. Rather, ESSI sought to recover its damages caused by HSPE's conduct through a well-documented claim *against Metric itself,* and Metric, faced with liability for that claim under its contract with ESSI, included the amount of the claim as a subset of its damages against HSPE. Therefore, Metric's actions are not prohibited by *APAC*.

We must point out that the result urged by defendants would work a manifest injustice to Metric, ESSI, and other similarly situated subcontractors. In effect, a general contractor could, by including contract provisions similar to Article 4 here, shield itself from any liability for payment to a subcontractor for its lower tier subcontractor's damages while retaining the right to sue the subcontractor for the lower tier subcontractor's work. Such a result is illogical. Moreover, even if we were to require a lower tier subcontractor like ESSI to sue its immediate higher tier subcontractor, there is no basis in law that we know of for the higher tier subcontractor to then sue the general contractor to recoup any amounts paid in satisfaction of those claims. We refuse to adopt a position that would, in effect, leave a lower tier subcontractor with virtually no remedy for the type of damages suffered by ESSI here at the hands of HSPE. We therefore hold that under the circumstances of this case, Metric is not precluded from recovering as part of its damages the duration damages sustained by ESSI as a result of HSPE's conduct, and the trial court did not err in

denying HSPE's motions for directed verdict and JNOV on the ESSI portion of Metric's claim.

## II.

Defendants next argue that the trial court committed reversible error by failing to issue requested instructions on special damages and on compromise and settlement. When a party properly tenders a written request for a special instruction which is correct in itself *and supported by the evidence,* the failure of the court to give the instruction, at least in substance, is reversible error. *Indiana Lumbermen's Mutual Ins. Co. v. Champion,* 80 N.C. App. 370, 379, 343 S.E.2d 15, 20-21 (1986) (emphasis added). For the reasons stated below, we hold that the trial court did not err by failing to give the requested instructions.

### A. Damages

[2] Metric's claims against HSPE included claims for overtime premium costs, loss of productivity, extended overhead, and loss of bonus. Defendants argued at trial that these "duration-related damages" constituted special damages, while plaintiffs claimed that they constituted general damages. After considering both parties' arguments, the trial court declined to give an instruction on special damages, instructing the jury on general damages only. On appeal, HSPE does not challenge Metric's right to recover damages for breach of contract, but only challenges the characterization of those damages as general damages.

> Contract damages are defined as either general damages, "damages that courts believe 'generally' flow from the kind of substantive wrong done by defendant," or special damages, those "peculiar to the particular plaintiff."

*Bolton I,* 94 N.C. App. at 405, 380 S.E.2d at 804 (*quoting* Dan B. Dobbs, *Remedies* § 3.2 (1973)). Defendants argue that under *Bolton I,* all duration-related damages are special damages. We disagree.

In *Bolton I,* the plaintiff argued that the trial court erred by excluding specific evidence of its delay damages, including the cost of keeping tools and equipment on the site for the extended period, labor inefficiencies, invoice and actual cost records, subcontractor's damages, and cost of delay in payment of retainage. *Id.* at 404, 380 S.E.2d at 804. The defendant argued the evidence was properly excluded because the plaintiff failed to tie its claimed damages to any

act or omission of the defendant. *Id.* The Court awarded a new trial to the plaintiff but declined to characterize the plaintiff's duration-related damages as general or special, stating only that duration-related damages are often difficult to prove and that proof of such damages must be "as specific as the circumstances will allow." *Id.* at 405-06, 380 S.E.2d at 805.

In the instant case, plaintiff presented specific evidence, through extensive documentation and witnesses including a construction expert, of the nature and amount of damages it suffered as a result of HSPE's delay. This evidence did not support an instruction for special damages. HSPE is a sophisticated corporation with extensive experience on projects of this nature. It obviously contemplated that delays on its part would result in the damages claimed by Metric, as is evidenced by the contract between HSPE and Metric. Article 9 of the contract specified the date upon which construction on the project was to begin and required Metric to complete its work to meet certain "milestone dates" and to prepare a schedule showing completion dates for major elements of its work. Article 9 further provided that the subcontract had to be completed on schedule and that if Metric was delayed in completing its work due to acts or omissions of other contractors or the owner, the time for completion could be extended and delay costs could be recovered from HSPE in certain circumstances. Article 20 of the contract provided for liquidated damages of $12,600 per day if Metric failed to complete its subcontract on schedule and a bonus of $9,000 per day if Metric completed its subcontract early. These contract provisions are a clear indication that HSPE recognized that delay damages might be incurred by one or more of the parties involved in constructing the plant, and HSPE cannot now be heard to argue that such damages are special damages. Indeed, if HSPE had been delayed by other contractors or the owner, it would be asserting these same types of damages, because they are common to the industry and naturally flow from such delays. Thus, Metric's damages were appropriately characterized as general damages, and we find no error in the trial court's instructions on this issue.

## B. Compromise and Settlement

[3] The evidence at trial showed that in the spring of 1990, HSPE admitted to Metric that it was experiencing delays in designing the plant and that Metric was entitled to additional compensation for its extra work caused by these delays. By May 1990, HSPE told Metric that the problems had been resolved and the designs would be com-

pleted by 16 July 1990. Based on these representations, the parties attempted to negotiate a single comprehensive change order which would address all problems that had arisen prior to July 1990. There followed a series of proposals and meetings through which the parties attempted to resolve Metric's claims. These negotiations concluded on 27 August 1990 with a proposal from HSPE to pay Metric $600,000 "[t]o resolve all outstanding claims and future engineering errors and omissions. . . ." HSPE stated that the terms of the offer would be spelled out in a change order which would be forthcoming by the end of August and that Metric could invoice HSPE for $300,000 at that time.

In anticipation of this change order, Metric invoiced HSPE $300,000 for items for which HSPE had already admitted it was liable. By the end of September, Metric had not received the promised change order from HSPE, and invoiced HSPE for another $150,000 in costs for which HSPE had admitted responsibility. On 4 October 1990, Metric received a change order from HSPE. Metric contended that certain terms of the change order were different than those previously agreed upon and that it contained a provision shielding HSPE from liability for future errors and omissions on the project, a term to which Metric had consistently refused to agree during negotiations. Metric refused to sign the change order, instead revising it to reflect what it considered the agreement to have been. Metric sent the change order back to HSPE, but HSPE never responded and no change order was ever signed between the parties. By February 1991, HSPE had paid both invoices Metric had issued the previous September. Defendants contend that the above facts resulted in a compromise and settlement and supported their requested special instruction on this issue and that the trial court's failure to give the instruction was error.

We need not discuss at length the differences between the defense of compromise and settlement and that of accord and satisfaction. Indeed, defendants' counsel acknowledged to the trial court that the two defenses, in the context of this case, are "really about one and the same." The trial court instructed the jury on accord and satisfaction as follows:

> On this issue the burden of proof is on [HSPE]. This means that [HSPE] must prove by the greater weight of the evidence the following two things.

First, that there was an agreement made by Metric accepting the offer contained in the August 27, 1990 letter, whereby the terms of that letter would be substituted for [HSPE's] then existing and future obligations to Metric. And second, that there has been a satisfaction or performance of such substituted agreement.

If you find by the greater weight of the evidence that there was an agreement upon or a meeting of the minds on the terms of that August 27, 1990 letter and if you further find that the agreement so made was performed then you will answer that issue yes.

We have carefully reviewed defendants' proposed instruction on compromise and settlement, and since the trial court's instruction centered on the 27 August 1990 letter which defendants contend represented a compromise and settlement of plaintiff's claim, we find the instruction given by the court conveyed the substance of defendants' requested instruction.

We note that even if there had been further instructions on the issue of compromise and settlement, it is unlikely a different result would have been reached. Compromise and settlement, like accord and satisfaction, turns on a central factual issue: whether there was a meeting of the minds and therefore an agreement between Metric and HSPE as a result of the negotiations in August 1990. The amounts invoiced by Metric were for items for which HSPE had already admitted liability, and the invoices preceded HSPE's proposed change order. Moreover, there was evidence that the change order ultimately proposed by HSPE contained terms materially different from those discussed by the parties previously. We believe the chronology of events described above supports a jury finding that there was no meeting of the minds between the parties as to any "substitute agreement." Therefore, the court's failure to instruct the jury on compromise and settlement was harmless. We find no reversible error in the court's instructions.

We have carefully examined defendants' remaining assignments of error and plaintiff's cross-assignment of error, and we find them to be without merit. The judgment of the trial court is therefore

Affirmed.

Judge JOHNSON concurs.

Judge WYNN concurs in part and dissents in part.

**METRIC CONSTRUCTORS, INC. v. HAWKER SIDDELEY POWER ENGINEERING**

[121 N.C. App. 530 (1996)]

Judge WYNN concurring in part and dissenting in part.

I respectfully disagree with the majority's conclusion that the trial court did not err in allowing Metric to recover ESSI's damages from HSPE.

In *Warren Bros. Co. v. North Carolina Dept. of Transport.*, 64 N.C. App. 598, 307 S.E.2d 836 (1983), a provision in the contract between the owner and general contractor provided that a subcontractor may not sue the owner for damages.[1] This Court held that the contractor may not assert against the owner any damages alleged to have been suffered by the subcontractor. *Id.* at 600, 307 S.E.2d at 838. The Court in *Warren Brothers* further stated: "[T]he subcontractor may not do indirectly through plaintiff what it could not do directly by suit against the defendant." *Id.*

However, the majority cites *Bolton Corp. v. T. A. Loving Co.*, 94 N.C. App. 392, 380 S.E.2d 796, *disc. rev. denied*, 325 N.C. 545, 385 S.E.2d 496 (1989) for the proposition that the *Warren Brothers* rule is inapplicable in the instant case. As the majority acknowledges, the instant case is clearly distinguishable from *Bolton*. In *Bolton*, this Court held that in a suit between two contractors, a contractor may assert damages suffered by its subcontractor as part of the contractor's damages. *Id.* at 408-09, 380 S.E.2d at 806-07.

In contrast, the case before us turns on whether Metric, a first-tier subcontractor may assert the damages of its subcontractor, ESSI, a second-tier subcontractor, in a suit against HSPE, the general contractor. I believe the instant case is closely analogous to *APAC-Carolina v. Greensboro-High Point Air.*, 110 N.C. App. 664, 431 S.E.2d 508, *disc. review denied*, 335 N.C. 171, 438 S.E.2d 197 (1993). In *APAC-Carolina*, this Court declined an opportunity to apply *Bolton* to the facts before it. In that case, a contractor attempted to assert the damages of its subcontractor in a suit against the owner. This Court stated:

> We conclude that APAC [the contractor] did not have standing to assert any claims on behalf of Sprinkler [the subcontractor]. Sprinkler had no claim against defendants [the general contractor] on its own behalf. In both *Warren* and *Bolton II* [*Bolton Corp. v. State of North Carolina*, 95 N.C. App. 596, 383 S.E.2d 671 (1989), *disc. review denied*, 326 N.C. 47, 389 S.E.2d 85

---

1. There is a similar provision in the contract relevant to the case *sub judice.*

SMITHERS v. TRU-PAK MOVING SYSTEMS

[121 N.C. App. 542 (1996)]

*(1990)*], the Court clearly stated that a general contractor may not assert a claim on behalf of a subcontractor if that subcontractor could not assert the claim itself. Thus, APAC may not bring its claim of $226,000 on behalf of Sprinkler.

*Id.* at 671-72, 431 S.E.2d at 512.

Similarly, I believe that in the case *sub judice*, Metric, the first-tier subcontractor, cannot assert the damages of ESSI, the second-tier subcontractor. It is true that in the case before us a first-tier subcontractor wishes to assert the damages of its second-tier subcontractor, whereas *APAC-Carolina* involved the attempted assertion of damages by a contractor on behalf of its subcontractor. However, the language and rationale of *Warren Brothers* apply equally to both *APAC-Carolina* and the instant case. In both cases, a party unable to assert damages on its own behalf attempted to assert damages through another party which contracted with the wrongdoer. Such an assertion of the damages of another is precisely what *Warren Brothers* forbids. In addition, the fact that the subcontractor in *APAC-Carolina* was a named plaintiff whereas ESSI is not a named plaintiff in the instant case is not a persuasive distinction for me. The title of the action cannot be allowed to determine its outcome. Under the majority's rationale, a lower-tier subcontractor could simply take a voluntary dismissal of its suit and thus easily evade the strictures of *APAC-Carolina*.

I believe we are bound by *APAC-Carolina* and *Warren Brothers*. Were this a case of first impression, the majority's position would be more persuasive. However, only our Supreme Court or, in appropriate instances, the legislature may change a prior decision of this Court.

I respectfully dissent.