U. S. INDUSTRIES, INC.

v.

BLAKE CONSTRUCTION CO.,
INC., Appellant.

U. S. INDUSTRIES, INC., Appellant,

v.

BLAKE CONSTRUCTION CO., INC.

Nos. 80–1581, 80–1644.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 17, 1981.

Decided Jan. 26, 1982.

Rehearing Denied March 23, 1982.

---

David V. Anthony, Washington, D. C., for Blake Construction Co., Inc., appellant in No. 80–1581 and cross-appellee in No. 80–1644.

Peter Barnes, Washington, D. C., with whom Michael B. Sheppard and E. Donald Elliott, Washington, D. C., were on the brief for U.S. Industries, Inc., appellee in No. 80–1581 and cross-appellant in No. 80–1644.

Before GINSBURG, Circuit Judge, McGOWAN, Senior Circuit Judge, and FRIEDMAN,\* Chief Judge, United States Court of Claims.

Opinion for the Court filed by Chief Judge FRIEDMAN.

\* Sitting by designation pursuant to 28 U.S.C.

FRIEDMAN, Chief Judge:

These cross-appeals challenge (1) a jury award of $9.2 million in favor of U.S. Industries, Inc. ("USI"), against Blake Construction Co., Inc. ("Blake"), in a suit for breach of contract, (2) the district court's grant of judgment n. o. v. in favor of Blake on an additional $400,000 the jury awarded USI on another claim, and (3) the district court's grant of summary judgment for USI on an additional claim and its dismissal of two other claims of USI. We uphold the jury verdict, the grant of judgment n.o.v. on the $400,000 award, and the grant of summary judgment for USI on its additional claim. We reverse the dismissal of USI's two other claims.

I.

A. This case arises out of the construction of the new Walter Reed General Hospital in Washington, D. C. Blake wanted to become the prime contractor on the project, but its assets were insufficient to enable it to obtain the substantial performance and payment bonds of more than $50 million that the Miller Act, 40 U.S.C. § 270a (1976 & Supp. III 1979), required. It turned to USI, a much larger firm, and suggested that they form a joint venture that would become the prime contractor for the construction of the hospital.

In June 1972, USI and Blake entered into a joint venture agreement, under which (1) the joint venture would submit a bid for the contract and the parties would become joint principals on the performance and payment bonds, (2) Blake would assume responsibility for and control of the construction of the hospital and represent the joint venture in its dealings with the United States, (3) Blake would pay USI one percent of the contract price, and (4) Blake would award the mechanical subcontract for the project to one of USI's unincorporated subsidiaries, Federal Sheet Metal. Blake and its three principals (the Benders) also entered into a contract of indemnity by which they agreed

§ 293(a).

to indemnify USI for any losses it might suffer in connection with the project.

On the same day, the United States Army Corps of Engineers awarded the contract to the joint venture. The initial contract price was approximately $102 million, which was increased to more than $135 million by the time the hospital was completed. Blake subcontracted approximately 75 percent of the work, including the subcontract for the mechanical work to Federal Sheet Metal. The original price under this subcontract was approximately $20 million, which rose to more than $35 million before the project was completed.

The construction contract provided that the hospital was to be completed within 1,260 days (approximately three-and-a-half years), by January 1976. The project actually was not completed until 1978, more than two years after its scheduled completion date. The responsibility and liability for these delays are the crux of the dispute in this case.

B. During the performance of the contract, the government, as it has a right to do, issued a large number of orders to the joint venture changing in various ways the work to be done. Under the contract the joint venture was entitled to extra compensation for the additional work resulting from the change orders. During the work, USI received extra compensation from the government for the additional direct costs it incurred as a result of the change orders.

In late 1977, the Corps of Engineers entered into an agreement with the joint venture (represented by Blake) under which the determination of (1) the additional time for performance to which the joint venture was entitled as a result of the change orders and (2) the compensation for the additional indirect costs attributable to the change orders would be made in a single agreement to be negotiated subsequently.

In January 1978, Blake stopped making payments to USI under the mechanical subcontract. The parties stipulated that Blake owed USI $2,611,455.62 under the contract.

After extensive negotiations between Blake (representing the joint venture) and the Corps of Engineers, they agreed in January 1980 to (1) an extension of the completion date under the contract to the date upon which the hospital was beneficially occupied (February 15, 1978), and (2) an equitable adjustment of $4.4 million as compensation for the additional indirect costs the change orders had caused the joint venture.

C. In August 1978, USI filed in the United States District Court for the District of Columbia a complaint against Blake and the Benders. It sought actual damages of $16,532,000 and punitive damages of $5 million. The complaint charged that Blake had breached the joint venture agreement and the mechanical subcontract by, among other things, failing timely and properly (1) to schedule work under the prime contract, (2) to perform its part of the work, (3) to furnish necessary materials and information, and (4) to make prompt payment to USI. One of the items for which USI sought recovery was its cost of obtaining builder's risk insurance. The complaint contained a claim against Blake and the Benders under the indemnity contract. The suit included claims of more than $1.2 million on behalf of two of USI's subcontractors under the mechanical work subcontract.

The defendant filed an answer denying any liability. Blake also filed a counterclaim that USI was indebted to it for what it termed "backcharges," i.e., work that was USI's responsibility but that Blake had performed. By the time of trial, the backcharges allegedly exceeded $700,000.

On cross-motions for summary judgment, the district court granted judgment for USI on its claim for the cost of builder's risk insurance. The court granted summary judgment for Blake on USI's claim on behalf of its subcontractors, on the ground that these claims were not properly in the case. The court denied the motions for summary judgment in all other respects.

D. At Blake's request, the case was tried to a jury. Blake twice moved for a

directed verdict. The court granted the first motion to the extent of dismissing without prejudice the claim based upon the indemnity agreement. It denied the first motion in all other respects, and totally denied the second motion. After a six-week trial, the court submitted the case to the jury under detailed instructions, and provided a special verdict form for the jury.

The jury awarded USI damages of $9.6 million, held against Blake on its counterclaim for backcharges, and determined that USI was entitled to interest at 12 percent on the amounts Blake had withheld under the mechanical work subcontract. The $9.6 million consisted of $9.2 million for the extra cost USI had incurred as a result of Blake's defaults in scheduling, coordination and/or disruption of the work, and $400,000 as extra indirect costs USI had incurred as the result of change orders issued by the government.

On Blake's motion for judgment n. o. v., the court granted it with respect to the $400,000 award for the extra indirect costs resulting from the change orders, and denied the motion in all other respects. The court also denied Blake's motion for a new trial, in which Blake contended the verdict was contrary to the weight of the evidence.

## II. BLAKE'S APPEAL (No. 80–1581)

The major issue on Blake's appeal is the validity of the jury award against it of $9.2 million. The principal elements of this award were: $3.3 million for the damage USI suffered from the delays for which Blake was responsible and $4.8 million for the damage USI suffered because of Blake's disruption of USI's work.

A. *Delay Damages.* Under the contract, Blake was responsible for erecting the steel structure of the building and its outer shell. USI could not begin to work under the mechanical subcontract until Blake had completed that work. Because of the delays in delivering to the job site the steel Blake needed for its work, USI's subsequent mechanical work was significantly delayed. USI contended that it was Blake's failure to order and erect the steel on time that was responsible for the delay.

Blake, on the other hand, attributed the delay to other causes: government change orders, strikes, and bad weather.

█ 1. Blake argues that article 2(b) of the mechanical work subcontract precludes any recovery by USI for the delay. That provision states in pertinent part:

> Contractor shall not be liable for any damages that may occur from delays or other causes on the part of other contractors or subcontractors involved in work, or the furnishing of materials, pertaining to this project.

Blake contends that the delay in furnishing steel was the fault of Blake's supplier, and that this provision immunizes it from liability for delay from that cause. It made this argument in its second motion for partial summary judgment. The district court rejected the contention, ruling that this provision "does not exculpate Blake for delays in FSM's subcontract performance caused by Blake's suppliers and vendors if those suppliers and vendors did not perform significant labor on the job site."

We affirm that ruling. The contract exculpated Blake from liability for delays "on the part of other contractors or subcontractors involved in work, or the furnishing of materials, pertaining to this project." The record shows that there is "a generally recognized distinction in the industry between a subcontractor and a supplier." *See also* J. Sweet, Legal Aspects of Architecture, Engineering & the Construction Process 450 (2d ed. 1977). If the parties had intended to immunize Blake from liability for delay caused by its suppliers and vendors, they easily could and presumably would have so provided by specifically so stating. The provision, however, covers only "contractors or subcontractors . . . ."

Although Blake argues that the distinction between a subcontractor and a supplier is significant only under the Miller Act, which deals with performance and payment bonds, it offers no convincing support for that view. We see no reason not to interpret this contract in the light of the industry practice. Equally unpersuasive is

Blake's other contention that the definition of "subcontractor" in the Defense Acquisition Regulation, 32 C.F.R. § 8.101–24 (1972), should apply. That provision defines a subcontractor as one who provides either services or supplies. The regulation, however, deals only with termination of contracts by the government—a situation which implicates different considerations from those involved in the present dispute between private contractors.

■ Since exculpatory clauses generally are not favored, they are strictly construed. *E.g., E. C. Ernst, Inc. v. Manhattan Construction Co.,* 551 F.2d 1026, 1029, *modified,* 559 F.2d 268 (5th Cir. 1977), *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978). The subcontract in this case was a printed form prepared by Blake, and it is appropriate to construe it against the drafter. *E.g., John W. Johnson, Inc. v. Basic Construction Co.,* 139 U.S.App.D.C. 85, 92 n.11, 429 F.2d 764, 771 n.11 (1970). In the absence of any indication either in the contract itself or in the surrounding negotiations leading to its execution that the parties intended the words "contractors or subcontractors" also to cover suppliers and vendors, we interpret the contract to mean what it says.

This interpretation of article 2(b) of the subcontract receives additional support from the language of article 5(d)(1) of the general contract between Blake and the Corps of Engineers. This article exculpates Blake from liability for, *inter alia,* "delays of *subcontractors or suppliers.*" (Emphasis added.) This specification should have alerted Blake to the risk it ran in failing to include "suppliers" in the exculpatory clause of its subcontracts with USI and others who performed work on the construction site.

2. Blake next contends that the recovery of delay damages was improper because the delay resulted in whole or in part from causes other than the late delivery of the steel, *e.g.,* from change orders, strikes, and bad weather, and that the delay in delivery of the steel was at most a concurrent cause of delay in Blake's steel work.

■ a. Blake argues that the joint venture, which it represented in negotiations with the government, agreed with the government that the other causes delayed the project 740 days, that since USI claimed delay damages for 815 days, Blake could have been liable only for 75 days, and that the jury verdict based upon the 815 days' delay cannot stand. Although the agreement between the joint venture and the government may have precluded USI from asserting in any dispute with the government that the other causes were not responsible for 740 days' delay, it did not bar USI from making that contention in its dispute with Blake. While Blake could bind the joint venture in its dealing with third parties, it could not by such action determine rights between itself and USI. *Cf. Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 19 n.2, 308 N.Y.S.2d 337, 341 n.2, 256 N.E.2d 506, 509 n.2 (1969) (agent cannot rely on his own activities to assert personal jurisdiction over principal, although third party could). The agreement between the joint venture and the government that the other causes were responsible for most of the delay did not preclude USI from showing in its suit against Blake that the latter had caused all or most of the delay.

■ b. The evidence was conflicting regarding the cause of the delay. USI, for example, introduced evidence that strikes did not delay its work.

In submitting the issue to the jury, the district court instructed it that "Blake is held responsible under the subcontract if the acts or omissions of one of its suppliers caused injury to Federal Sheet Metal," and that Blake would not be responsible for "delay or extra work attributable to severe weather amounting to an act of God or to strikes." The court further charged that if there were two or more causes for particular delays, for one of which Blake was not responsible, the jury should apportion the concurrent causes "so as to charge Blake only with its portion of any responsibility

for the resulting effect on Federal Sheet Metal's work," and that if the jury was unable "to determine a reasonable basis for such an apportionment, then [it] must not attribute any responsibility to Blake."

These instructions, to which Blake did not except, were correct. They left it to the jury to determine whether, and if so to what extent, Blake was responsible for USI's delay. If there were concurrent causes of a particular delay, the jury could hold against Blake only for the portion of the delay attributable to Blake and only if the delay could be apportioned.

The evidence on these factual issues was conflicting. We cannot say that the jury acted impermissibly in crediting the plaintiff's rather than the defendant's evidence, or that the jury's verdict was not supported by the evidence.

■ c. Blake further contends that the jury should have been permitted to consider whether the many change orders of the government caused, in whole or in part, USI's delay damages. The district court instructed the jury that USI had been "paid the extra direct costs, that is, the labor and immediate out-of-pocket expense attributable to the change orders affecting its work," but that in addition to those payments, "Federal Sheet Metal is entitled to receive from Blake the amount of indirect expenses, if any, which were actually caused by the change orders, themselves." The jury awarded $400,000 for the additional indirect expenses, with respect to which the court granted judgment n. o. v. *See infra* at 549–550.

Blake submitted 63 proposed jury instructions, many quite lengthy. One sentence of proposed Instruction No. 63 was: "If you find that the work of Federal Sheet Metal was delayed or disrupted by changes ordered by the Army Corps of Engineers, then you may not award any damages to USI." After the district court had charged the jury without giving the quoted instruction, Blake took only two exceptions. The only one applicable to this issue was: "We would simply note our objection to the change order charge . . . [f]or the reasons stated in the memorandum."

The memorandum to which Blake referred presumably was the one Blake filed accompanying proposed Instructions Nos. 62 and 63. Instruction No. 62 was a lengthy one summarizing the contentions of the parties. Instruction No. 63, which was headed "Right of USI to Recover for Construction Delays and Disruption," contained three paragraphs. The instruction quoted above was in the middle of the third paragraph, which was a long one.

The memorandum was headed "Defendants' Memorandum Concerning Plaintiff's Delay and Disruption Claim." It was filed on March 5, 1980, a week before the case was submitted to the jury, and contained 17 pages. The major argument in the memorandum was that USI was presenting a total cost claim. Blake contended that USI had to prove that Blake had caused all of its damages and that if Blake could show that any damages were attributable to other causes, *e.g.*, strikes, bad weather, change orders, or other subcontractors, then USI could recover nothing. In our opinion, we reject the premise of this argument, *i.e.*, we hold that USI did not present a total cost claim. *See infra* at 547. Therefore the court correctly refused to give requested Instruction No. 63, which discussed in detail Blake's theory that it could be liable only if it had caused all of the plaintiff's damage.

In a case as complicated as this, in which Blake submitted many requested and detailed instructions, the generalized exception "to the change order charge" and the reference to the memorandum were inadequate to preserve Blake's claim for the specific instruction it now contends should have been given. "Under these facts a general exception is not sufficient. . . . [O]bjections to a charge must be sufficiently specific to bring into focus the precise nature of the alleged error." *Palmer v. Hoffman*, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645 (1943); *accord, Wilson v. Crouse-Hinds Co.*, 556 F.2d 870 (8th Cir.), *cert. denied*, 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977); Fed.R.Civ.P. 51.

In any event, Blake has not been prejudiced by the district court's refusal to give the instruction Blake argues should have been given. Presumably, Blake wanted an instruction on change orders similar to the one the court gave on bad weather and strikes. "[D]elay or extra work attributable to severe weather amounting to an act of God or to strikes cannot be attributed to Blake." However, in substance, the court so instructed the jury. The court told it that USI had been compensated for the direct costs of change order delays by the Corps of Engineers and that it could award USI only the additional indirect expenses the change orders caused. Further, the court instructed it to avoid double recoveries. In view of these instructions and the judgment n. o. v., none of the damages assessed against Blake covered change orders.

**B.** *Disruption Damages.* The other major element of the jury award was the $4.8 million for the damages USI suffered from Blake's disruption of its work.

There were two kinds of disruption. First, USI asserts that Blake ripped out and damaged its work, forcing USI to redo the work. Second, it claims that Blake failed to schedule and coordinate the work, causing USI's productivity to be diminished. According to USI, this latter kind of disruption occurred, for example, through Blake's failure (1) to schedule USI's and other subcontractors' work so that the work could be done smoothly and quickly, (2) to give USI notice of work to be done, (3) to provide USI with work space and storage space, and (4) to give USI use of a hoist.

Unlike the delay claim, the disruption claim is intended not to redress USI's loss from being unable to work, but to compensate USI for the damages it suffered from Blake's actions that made its work more difficult and expensive than USI anticipated and than it should have been.

Blake challenges the disruption award on two grounds. First, it contends that the award gave USI a double recovery because the award overlapped the award for delay damages. Second, it challenges the theory upon which damages were calculated and the sufficiency of the evidence to support the award.

1. The district court instructed the jury separately with respect to the disruption and delay claims. With respect to the "alleged disruption," the court told the jury that as the general contractor Blake had a duty "not to interfere with the work of a subcontractor, like Federal Sheet Metal, if at the time Blake could have foreseen that such interference would unreasonably hinder or unreasonably disrupt the contractor's completion of its work by requiring Federal Sheet Metal to perform its work in an unnecessarily disorderly or inefficient manner" and that "[i]f you find by a preponderance of the evidence that Blake failed to schedule and coordinate Federal Sheet Metal's work as required by the contract and custom of the trade, or that Blake disrupted Federal Sheet Metal's work in violation of the subcontract, then you must consider the extent of the harm, if any, which resulted as the direct and natural consequence of Blake's breach." The court also gave the following instruction regarding double recovery:

> Any damages you may find to have been caused by Blake due to scheduling or coordination violations or to disruption must be determined eliminating any and all duplication. There cannot be double recovery. If a particular delay resulting in extra costs to Federal Sheet Metal and caused by Blake is found to be attributable to more than one of these three causes, only a single damage may be assessed by you to cover the resulting harm.

USI presented extensive evidence showing the damages it had suffered from Blake's disruption of its work, and that those damages were separate from and in addition to the delay damages. Both parties argued to the jury the question of duplication of damages.

The court submitted the question of disruption damages to the jury under instructions that dealt with the issue separately from delay damages. The court told the

jury that any damages due to "scheduling or coordination violations" or to "disruption" must be determined "eliminating any and all duplication. There cannot be double recovery."

The jury concluded that in addition to the delay damages, USI had suffered disruption damages of $4.8 million. There is no reason to conclude that in making that award the jury disregarded the district court's admonition that double recovery was not to be awarded or that the jury was unable to separate the two elements of damages. Since, as explained below, the evidence supports the award for disruption damages, we uphold it.

2. USI's proof of disruption damages consisted of statistical and financial data and expert testimony showing that after May 31, 1975 (when USI felt the effect of Blake's disruptions), its labor costs increased significantly. The increase was shown by comparing labor costs before and after that date. Such comparison of the cost of performing work in different periods is a well-established method of proving damages, which frequently has been used in breach of contract cases. *E.g., Anvil Mining Co. v. Humble*, 153 U.S. 540, 14 S.Ct. 876, 38 L.Ed. 814 (1894), *Abbett Electrical Corp. v. United States*, 142 Ct.Cl. 609, 162 F.Supp. 772 (1958).

This case is unlike *Nat Harrison Associates, Inc. v. Gulf States Utilities Co.*, 491 F.2d 578 (5th Cir. 1974), upon which Blake relies. There the court criticized "comparison of labor efficiency prior to and during the breach" as a method of proving damages, not because the method itself was flawed but because the plaintiff's evidence under that theory "lack[ed] proof of causation." *Id.* at 588 n.3. Here, in contrast, USI did introduce evidence showing causation, and the jury was instructed that such causation was a necessary element of USI's case.

This method of proving damages does not constitute use of the disfavored total cost method, as Blake contends. Under the total cost method, a plaintiff is entitled to recover the difference between the original contract price and its direct costs for doing the work, without having to show that the breach was responsible for the additional expense. The method is disfavored because it assumes that the defendant's breach was the cause of all the extra cost. *Boyajian v. United States*, 191 Ct.Cl. 233, 423 F.2d 1231 (1970); *F. H. McGraw & Co. v. United States*, 131 Ct.Cl. 501, 130 F.Supp. 394 (1955).

In the present case, as we have indicated, USI's proof of damages established the additional expenses it incurred as a result of Blake's disruption of USI's work. Even if USI's recovery approximated the amount it would have obtained under the total cost method—a question we need not decide— that fact would not establish that USI relied upon the total cost method in establishing its damages.

In a breach of contract suit, "a plaintiff is not required to prove the amount of his damages precisely"; only "a reasonable estimate must be established." *W. G. Cornell Co. v. Ceramic Coating Co.*, 200 U.S.App.D.C. 126, 129, 626 F.2d 990, 993 (1980). The weight to be given the evidence, including expert testimony, is for the jury to determine. Many of Blake's challenges to the evidence on damages, including its attack on the calculation of USI's expert McCarthy and its characterization of much of the evidence as speculative, relate to the weight of the evidence, not its admissibility.

We hold that there was sufficient evidence from which the jury could determine both the fact that USI had been damaged by Blake's disruption of USI's work and the amount of that damage. The jury award of $4.8 million for disruption damages is sustained.

C. *Interest.* The parties have stipulated that under the mechanical subcontract Blake owed USI $2,611,455.62. With the consent of the parties, there were submitted to the jury two questions relating to this indebtedness: Was USI "entitled to receive interest on this money during the period it was withheld in order to compen-

sate Federal Sheet Metal for the delayed payment" and, if it was, at what rate? The jury concluded that USI was entitled to interest at 12 percent. After the verdict, the parties stipulated that the amount of such interest was $498,436.10.

Blake challenges the jury's determination of an interest rate of 12 percent. It points to a provision of the District of Columbia Code that prescribes six percent as the interest rate, "in the absence of express contract," on judgments and decrees. 28 D.C. Code § 3302 (1981). Another provision of the code, however, authorizes prejudgment interest on liquidated debts at a rate set by contract. 15 D.C. Code § 108 (1981).

Blake agreed with USI to allow the jury to determine the rate of interest. In return for this agreement, USI waived a claim against Blake for conversion and punitive damages. By agreeing to let the jury determine the interest rate, Blake waived its right to invoke the statutory limitation of six percent.

Although Blake apparently contends that the statutory limitation is nonwaivable, it gives no convincing reasons for that conclusion. Indeed, since the statute permits the parties to waive that limitation by contract, there is no reason why they also cannot waive it by agreement during litigation. *Brooklyn Savings Bank v. O'Neill*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), upon which Blake relies, involved a wholly different situation. There the Court held invalid an employee's waiver of his right under the Fair Labor Standards Act to liquidated damages from his employer for the latter's violation of that Act, on the ground that "Congress did not intend that an employee should be allowed to waive his right to liquidated damages." *Id.* at 706, 65 S.Ct. at 902. There is no basis for concluding, however, that Congress intended to bar someone like Blake from waiving the interest limitation in the D.C. Code and submitting the rate of interest to the jury.

■ D. *Funding, Overhead and Supervisory Costs.* The jury awarded $810,456 for USI's "cost of funding," which appar-

ently represented the interest USI paid on sums it borrowed to finance the extra expense it incurred as a result of the delay in and disruptions of the work. The jury also awarded $319,632 for the additional home office overhead costs and $260,000 for the additional supervisory costs USI incurred as a result of the delay and disruption. Blake argues that there is no or insufficient evidence to support these three items of damage.

We do not reach these questions because Blake did not preserve them for appeal. Although Blake raised the points in its motion for judgment n. o. v., a prerequisite to any motion for judgment n. o. v. is a motion for directed verdict at the close of all the evidence. Fed.R.Civ.P. 50(b). Blake made two motions for directed verdict, but neither included these specific claims.

■ The precise claim made in the motion for judgment n.o.v. must have been made in the motion for directed verdict. A motion for directed verdict based on other grounds will not satisfy Rule 50(b). *Johnson v. Rogers*, 621 F.2d 300, 305 (8th Cir. 1980); *Wall v. United States*, 592 F.2d 154, 159–60 (3d Cir. 1979); *Sulmeyer v. Coca Cola Co.*, 515 F.2d 835, 846 (5th Cir. 1975), *cert. denied*, 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 341 (1976); 9 C. Wright & A. Miller, Federal Practice & Procedure § 2537 at 598 (1971) ("[s]ince it is technically only a renewal of the motion for directed verdict made at the close of the evidence, it cannot assert a ground that was not included in the motion for a directed verdict"); *see Baltimore & Carolina Line v. Redman*, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636 (1935).

Blake also included these claims in its motion for a remittitur, for which there are no prerequisites. Fed.R.Civ.P. 59. A remittitur, however, is an alternative to a new trial, since the movant seeks a reduction in the judgment or, alternatively, a new trial. Blake does not seek either of these remedies but instead contends that the award of these three items should be set aside as unsupported by the evidence. The inclusion of these items in Blake's motion for a remittitur did not preserve the point Blake now argues.

■ E. *Builder's Risk Insurance.* The district court granted partial summary judgment for USI on its claim for the premiums of $132,000 it paid for builder's risk insurance it obtained. The court ruled:

> Under the undisputed circumstances, plaintiff's purchase of builder's risk insurance on behalf of the joint venture was reasonable and essential for the furtherance and protection of the venture against an established risk. The cost of this insurance was not excessive. ·

We affirm that ruling. It was standard practice in the construction industry for prime contractors to obtain builder's risk insurance. Blake did not do so. Although Blake and the Benders agreed in the indemnity agreement to protect USI against any loss on the project, the size of the project and the consequent potential for huge losses, coupled with the relatively small financial worth of the indemnitors in relation to the potential liability, made it prudent and reasonable for USI to procure the insurance.

F. *Blake's Counterclaim.* Blake's counterclaim sought recovery of $688,000 in so-called "backcharges," namely, work that USI should have done under the contract but that Blake in fact did. Blake asserts that the jury's failure to award anything on its counterclaim "is totally contrary to the weight of the evidence." Blake challenges the district court's denial of its motion for a new trial on its counterclaim and seeks that relief from us.

■ Our review of a denial of a motion for a new trial is extremely limited, and particularly where, as here, the ground was alleged insufficiency of the evidence. *Vander Zee v. Karabatsos,* 191 U.S.App. D.C. 200, 206, 589 F.2d 723, 729 (1978), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1066 (1979); *Taylor v. Washington Terminal Co.,* 133 U.S.App.D.C. 110, 409 F.2d 145, *cert. denied,* 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969). The record contains evidence that USI cleaned up its own trash, and was assessed charges for trash that was not trash and for trash that was not its own. These are items for which

Blake sought recovery in its counterclaim. As is true with respect to so many issues in this case, there was conflicting evidence, and the jury credited USI's version of the facts rather than Blake's. We cannot say the district court abused its discretion in denying Blake a new trial on its counterclaim.

### III. USI'S APPEAL (No. 80–1644)

USI's appeal challenges three rulings of the district court: (A) the grant of judgment n. o. v. on the jury's award of $400,000 for additional indirect expense resulting from the government's change orders; (B) the dismissal of USI's claim on behalf of its subcontractors; and (C) the dismissal of its claims against Blake and the Benders under the indemnity agreement.

■ A. *The Judgment n.o.v.* The district court instructed the jury that under the joint venture the Corps of Engineers "had the right to modify the work as it went along and subcontractors were required to do the extra or different work ordered." It also charged that although Federal Sheet Metal had been paid its extra "direct costs" resulting from the change orders, namely, the "labor and immediate out-of-pocket expense attributable" to them, it had not been paid "for any indirect expense, that is, field office and overhead expense that may have been attributable to this extra work," and that Federal Sheet Metal "is entitled to receive from Blake the amount of indirect expenses, if any" that the change orders caused. The jury awarded USI $400,000 on this claim.

The district court granted a judgment n.o.v. on this award on two grounds: (1) The evidence was "insufficient to permit a conclusion by the trier-of-fact that the change orders had any adverse effect not otherwise compensated on the work performed by Federal Sheet Metal," and (2) "[O]n the evidence presented the jury could not have arrived at a specific damage figure without resorting to impermissible conjecture or speculation." We agree with the second ground of decision and, without con-

sidering the first ground, uphold the grant of judgment n.o.v. on this claim.

■ The standard for granting judgment n.o.v. is strict. It is the same as that for a directed verdict: there must be only one possible conclusion that reasonable jurors could reach. *Vander Zee v. Karabatsos*, 191 U.S.App.D.C. at 203, 589 F.2d at 726. The trial court cannot weight the evidence or judge the credibility of the witnesses. *Boutros v. Riggs National Bank*, 211 U.S. App.D.C. 27, 655 F.2d 1257 (1981).

To support its claim of additional indirect costs resulting from change orders, USI presented evidence showing the amount of such additional cost it incurred each day. It did not, however, establish or even provide a reliable estimate of the number of days for which it incurred those extra indirect costs. Although damages need not be proven with exactitude, they must be supported by the evidence. *Jamison Co. v. Westvaco Corp.*, 526 F.2d 922 (5th Cir. 1976). Unless there was evidence from which the jury could determine the number of days for which USI incurred additional indirect costs, its award of those costs cannot stand. *Cf. Franklin Music Co. v. American Broadcasting Cos.*, 616 F.2d 528 (3d Cir. 1979) (lack of proof of an essential element of damages supports award of judgment n.o.v.).

USI attempts to supply this lack of proof by suggesting various calculations and assumptions upon which the jury verdict may have rested. They are insufficient to support the determination. We sustain the grant of judgment n.o.v. because, as the district court held, "the specific damage figure" the jury reached was based not upon "the evidence presented" to it, but upon "conjecture or speculation."

■ B. *USI's Claims on Behalf of Its Subcontractors.* USI itself subcontracted approximately 20 percent of the work under the mechanical subcontract with Blake. After the project was completed, two of these subcontractors—Intercounty Construction Corp. ("Intercounty") and Powers Regulatory Company ("Powers")—informed USI that the delay and disruption in USI's work that Blake had caused also had increased their own costs. Their total claims aggregated approximately $1.2 million.

USI entered into separate agreements with Intercounty and Powers under which (1) USI agreed to prosecute the claims of those companies as part of its suit against Blake, (2) Intercounty and Powers agreed to accept the amounts recovered from Blake in satisfaction of those claims, and (3) Intercounty (but not Powers) retained the right to sue USI for its additional cost if its claim were reduced or denied because of a defense or counterclaim by Blake that did not affect the merits of Intercounty's claim. USI included Intercounty's and Powers' claims in its suit against Blake.

The district court granted Blake's motion for partial summary judgment on those claims, and dismissed them without prejudice. Following that ruling, Powers filed in the Superior Court of the District of Columbia a suit against USI and Blake, and Intercounty there filed a suit against USI, which impleaded Blake as a third-party defendant. Both suits sought recovery on the same claims that USI had asserted on behalf of Intercounty and Powers in the present suit. Blake asserted as a defense in those suits that the statute of limitations bars the claims of Intercounty and Powers.

We reverse the district court's dismissal of those claims. It is common practice for a contractor to present claims of its subcontractors in a suit against the other party to the prime contract. *United States v. Blair*, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039 (1944); *J. L. Simmons Co. v. United States*, 158 Ct.Cl. 393, 398, 304 F.2d 886, 889 (1962). Although the question has arisen mainly in suits against the United States, the reasons for permitting the assertion of those claims are equally applicable in suits between private parties. As the Court explained in *Blair*, 321 U.S. at 737–38, 64 S.Ct. at 823:

Clearly the subcontractor could not recover this claim in a suit against the United States, for there was no express or implied contract between him and the Government. *Merritt v. United States,*

267 U.S. 338, 45 S.Ct. 278, 69 L.Ed. 643 [(1925)]. But it does not follow that respondent [the prime contractor] is barred from suing for this amount. Respondent was the only person legally bound to perform his contract with the Government and he had the undoubted right to recover from the Government the contract price for the tile, terrazzo, marble and soapstone work whether that work was performed personally or through another. This necessarily implies the right to recover extra costs and services wrongfully demanded of respondent under the contract, regardless of whether such costs were incurred or such services were performed personally or through a subcontractor. Respondent's contract with the Government is thus sufficient to sustain an action for extra costs wrongfully demanded under that contract. *Hunt v. United States*, 257 U.S. 125, 42 S.Ct. 5, 66 L.Ed. 163 [(1921)].

In the instant case, Intercounty and Powers could not have maintained an action against Blake, since there was no privity between them and that company. Blake was obligated to pay USI for the work the latter performed under the contract. That obligation existed whether the work had been done by USI itself or by its subcontractors. As long as USI was required to remit to Intercounty and Powers any amount it recovered on their behalf from Blake—as its contracts with those two firms required it to do—it was entitled to assert claims on their behalf. *Blair; Timber Investors, Inc. v. United States*, 218 Ct.Cl. 408, 587 F.2d 472 (1978); *J. L. Simmons Co.*

The grounds upon which the district court dismissed these claims—which did not include any lack of authority in USI to present the claims on behalf of Intercounty and Powers—are unconvincing. The court could have avoided the problems of confusion by ordering separate trials. Fed.R. Civ.P. 42(b). There was no danger that Blake could be subjected to double liability, since neither Intercounty nor Powers has any direct claim against Blake. The court's concern that permitting USI to assert the

claims would circumvent the jurisdictional requirements of the Miller Act ignores the fact that this suit is not on the performance and payment bonds (to which the Miller Act relates), but for breach of the contract between USI and Blake.

The court's view that Intercounty and Powers are indispensable parties is inconsistent with the authority of USI to assert the claims on behalf of those companies. In any event, the court made no attempt to join them in the suit and even denied a motion by Powers to intervene. Indeed, the court's dismissal of the claims on behalf of Intercounty and Powers without prejudice suggests that the real reason for dismissal was convenience of judicial administration. That is not a valid ground for dismissing a properly asserted claim. *Cf. Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976) (federal court cannot remand to state court, on grounds of calendar congestion, case that had been properly removed from state court).

On the remand of these claims, the district court may take whatever action it deems appropriate for their handling. For example, it may suspend proceedings pending disposition of the suits by Intercounty and Powers in the Superior Court of the District of Columbia. If it does so, it may condition such suspension upon Blake's abandoning the statute-of-limitations defense it has asserted in those suits.

■ *C. The Claims Under the Indemnity Contract.* On Blake's first motion for a directed verdict, the district court dismissed the claims against Blake and the Benders under the indemnity agreement. It ruled that USI's right to recover under that agreement "has not as yet matured." The dismissal was without prejudice to the right of USI to seek recovery under the indemnity agreement if Blake "fails, refuses or is unable to pay all or any part" of any final judgment against it.

■ The settled rule, however, is that unless there is an express agreement to the contrary, the creditor may sue the sure-

ty directly without first obtaining a judgment against the principal debtor or even making a demand upon it. *Warner Lambert Pharmaceutical Co. v. Sylk,* 348 F.Supp. 1039, 1043 (E.D.Pa.1971), *aff'd,* 475 F.2d 1398 (3d Cir. 1973); *United States v. Martin,* 344 F.Supp. 350 (E.D.Mich.1972); *C & L Rural Electrical Cooperative Corp. v. American Casualty Co.,* 199 F.Supp. 220 (E.D.Ark.1961); 42 C.J.S. *Indemnity* § 30 at 612 (1944). The creditor's claim against the surety is independent of the claim against the debtor. *Pacific National Insurance Co. v. Transport Insurance Co.,* 341 F.2d 514 (8th Cir.), *cert. denied,* 381 U.S. 912, 85 S.Ct. 1536, 14 L.Ed.2d 434 (1965); *Christenson v. Diversified Builders Inc.,* 331 F.2d 992 (10th Cir.), *cert. denied,* 379 U.S. 843, 85 S.Ct. 82, 13 L.Ed.2d 48 (1964). This court has sanctioned the practice. *Carroll v. National Surety Co.,* 58 U.S.App.D.C. 3, 24 F.2d 268 (1928).

The contract of indemnity here involved does not require USI to obtain a judgment against Blake before proceeding against the indemnitors. The district court therefore should not have dismissed the claims under that contract. Although Blake argues that on the merits USI cannot recover under the indemnity contract, there is no occasion for us to decide the question, since that is an issue for the district court initially to determine.

## CONCLUSION

In No. 80–1581, the judgment is affirmed. In No. 80–1644, the judgment n.o.v. on change orders is affirmed, and the partial summary judgment in Blake's favor on the claims of USI's subcontractors and the directed verdict in Blake's favor on USI's indemnity claims are reversed. The case is remanded to the district court for further proceedings in conformity with this opinion.

### On Petition for Rehearing

PER CURIAM:

The appellant, Blake Construction Co., Inc. ("Blake"), has moved for rehearing on two grounds which, because of their nature and erroneous assumptions, call for a short response.

## I.

Blake argues that the court failed to address its "most substantial and far reaching" argument. This was that appellee, U.S. Industries, Inc. ("USI"), had breached its fiduciary duties as a member of the joint venture to Blake by failing to cooperate with Blake in negotiating the final settlement of the contract with the U.S. Army Corps of Engineers. Blake asserts that as a result of such noncooperation it was unable to recover all that was due to the joint venture, and that the effect of our decision is to enable USI to recover from Blake what USI prevented Blake from recovering from the Corps of Engineers.

Blake's argument with respect to USI's alleged breach of fiduciary obligation, as stated in its brief in support of its cross appeal, was that USI could and should have obtained relief from the Corps of Engineers "For Change-Related Delay," and that USI's failure to participate properly in the negotiations with the Corps barred it from recovering from Blake the damages that could have been recovered from the Corps. Pp. 13–20. In its petition for rehearing, Blake similarly states that "[t]he subject of those negotiations was all the delay and disruption costs caused by Change Orders issued by the Corps of Engineers." Pp. 4–5. In other words, this argument related only to the issue of damages resulting from change orders.

As we pointed out in our opinion, however, the district court instructed the jury that USI had been compensated for the direct costs of change orders, that USI could recover separately for any indirect costs of such orders, and that the jury should avoid double recoveries. Slip op. at 10–12. Under the court's instructions the only item relating to change orders for which the jury could have awarded damages was the additional indirect costs those orders imposed upon USI. The jury awarded $400,000 for those indirect costs, but the district court set aside that portion of the award when it granted judgment n.o.v.

In sum, none of the recovery against Blake rests upon the change orders. There was therefore no reason for us to discuss Blake's claim that USI violated its fiduciary duty to Blake, since the alleged violation related solely to additional expenses caused by change orders. Blake's argument thus was irrelevant.

## II.

Blake's second argument is that the court erroneously refused to consider Blake's objections to USI's recovery for funding, overhead, and supervisory costs because Blake had not preserved those points for appeal, since Blake had not included them in a motion for a directed verdict, which is a prerequisite under Fed.R.Civ.P. 50(b) to a motion for a judgment n.o.v. Blake now contends that it made the argument in its first motion for a directed verdict.

The portion of the motion upon which Blake relies, however, argued only that USI presented a total cost claim and that USI was seeking a double recovery. Blake's most specific reference is to an argumemt entitled "USI has Improperly used Total Cost Method." We rejected Blake's total cost and double recovery arguments. Slip op. at 13–15. Blake's motion did not argue that, apart from these contentions, there was insufficient evidence to support USI's funding, overhead, and supervisory cost claims. The latter argument, however, was the basis upon which Blake challenged the award for those items on appeal.

We held that Rule 50(b) requires that the same argument made in a motion for judgment n.o.v. must first have been presented in a motion for a directed verdict. Although the arguments Blake made in its first motion for a directed verdict and on appeal all relate to the burden of proof, they are quite distinct. The fact that Blake may have raised these arguments during the trial is irrelevant. Rule 50(b) requires them to be made in the motion for a directed verdict before they may be asserted as the basis for a judgment n.o.v., and Blake did not do so.

The petition for rehearing is denied.