**GIAMMETTA ASSOCIATES, INC.**

v.

**J.J. WHITE, INC.**

Civ. A. No. 82–5302.

United States District Court,
E.D. Pennsylvania.

Nov. 2, 1983.

Kenneth M. Cushman, Pepper, Hamilton & Sheetz, Philadelphia, Pa., for plaintiff.

Cornelius C. O'Brien, O'Brien & Davis, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Senior District Judge.

Defendant entered into a construction contract with Gulf Oil Corporation and subcontracted to plaintiff certain portions of the work. Plaintiff has sued for breach of contract claiming that delays in receipt of materials and the resulting disruptions in plaintiff's construction work caused plaintiff to incur substantial damages.

Defendant has moved for summary judgment, asserting that two provisions of the subcontract bar plaintiff's recovery. I shall deny defendant's motion.

### I. Article IV of the Subcontract Agreement

Article IV of the subcontract (D–7) between plaintiff and defendant states in part:

> If the Subcontractor shall be delayed in beginning, prosecuting or completing the Subcontract Work by the act, omission, neglect or default of the Contractor, the Architect, the Owner, or any contractor or subcontractor performing work upon the Project, or by any damage caused by fire or other casualty for which the Subcontractor is not responsible, or by general strikes or lockouts, then the time for the completion of the Subcontract Work shall be extended for such period of time as the time lost by reason of any of the aforesaid causes. Such an extension shall be the Subcontractor's sole and exclusive remedy for such delay and the Contractor shall not be responsible for any increased costs, charges, expenses or damages of any kind resulting from such delay.

Defendant argues that this provision, combined with the statement by defendant's agent in his deposition that he understood the provision at the time he signed the subcontract limited plaintiff's remedies for damages caused by defendant's delay to an extension of time within which to complete its work. Defendant further supports its argument by noting that the subcontract between plaintiff and defendant incorporated Gulf's Invitation to Bid (D–21) which was circulated among potential general contractors, including J.J. White. Paragraph 11 of Gulf's Invitation to Bid provides that the owner will not be responsible for failure of suppliers to meet promised shipping dates and that the general contractor will adjust construction to the arrival of materials. (D–21 at 45). Mr. Gambino, the vice-president and general manager of the plaintiff, admits in his deposition that he was familiar with Gulf's Invitation to Bid when he signed the subcontract with J.J. White.

Plaintiff argues that ¶ 11 of Gulf's Invitation to Bid on its face does not apply to Giammetta, but rather that it applies only to the contractual relationship between Gulf and J.J. White. Furthermore, plaintiff claims that Article IV of the subcontract does not apply as a matter of law to delays caused ultimately by the supplier. I agree with plaintiff[1] on both issues.

In Pennsylvania, clauses such as Article IV that limit a party's right to sue are strictly construed against the drafter. *Galligan v. Arovitch*, 421 Pa. 301, 219 A.2d 463 (1966). By its terms, Article IV applies to delays caused by the contractor, architect, owner "or any contractor or subcontractor performing work upon the Project." Plaintiff's vice-president, Gambino, swears in his deposition that the delays in this case were caused by defectively manufactured materials and the failure of suppliers to deliver materials on time. Defendants have not countered Gambino's affidavit. Therefore, there is no factual dispute regarding the causes of the delays. Although the Invitation to Bid required Gulf (the owner) to order some of the supplies, Gulf is never identified as the supplier or the manufacturer of the materials. The terms of Article IV of the subcontract

---

1. Because I agree with plaintiff that as a matter of law Article IV of the subcontract does not apply here, I will not reach the question presented by plaintiff of whether there is a question of fact that the delays were extraordinary and not within the contemplation of the parties.

do not include delays caused by the supplier or the manufacturer.

*United States Industries v. Blake Construction Company,* 671 F.2d 539 (D.C. 1982) is directly on point. In *Blake,* the contract included a much more explicit provision than the provision in the contract before me:

> Contractor shall not be liable for any damages that may occur from delays or other causes on the part of other contractors or subcontractors involved in work, or the furnishing of materials, pertaining to this project.

Because plaintiff contended that delays were caused by the supplier and the language of the contract did not mention suppliers, in spite of the inclusion of the language "the furnishing of materials," the Court of Appeals concluded that a strict construction of the contract would exclude supplier-caused delays from the exculpatory clause of the contract. Therefore, the Court found that summary judgment was inappropriate because the exculpatory clause was inapplicable. Pennsylvania's strict construction rule, like the District of Columbia rule interpreted in the *Blake* case, precludes me from construing Article IV to apply to suppliers and/or manufacturers of the materials. The exculpatory clause in question here does not apply to delays and disruptions caused by the supplier or manufacturer.

### II. Article XIII of the Subcontract: Release

Defendant argues that even if Article IV does not apply in this case, Article XIII bars plaintiff's suit. Article XIII provides in part:

> The acceptance by the Subcontractor of the final payment hereunder shall be deemed to be a complete and unconditional release of any and all existing or future claims or demands by the Subcontractor against the Contractor, known or unknown, hereunder or in connection herewith, whatever they may be or howsoever they may arise as well as for every act and neglect of the Contractor and any person or firm for whom the Contractor shall or may be deemed responsible.

Gambino admitted in his deposition that the plaintiff received final payment for the contracting work it performed. Gambino also swore in his affidavit, however, that any extras that exceeded the base subcontract price were always billed on separate invoices from the contract billings, that he considered plaintiff's claim for delays and disruptions to be claims for extras and that he did not intend to give up the right to those claims when he sent the invoice for final payment on the contract to defendant on August 15, 1980.

The question before me is whether the release is enforceable against plaintiff. Pennsylvania law recognizes that releases are binding, *Three Rivers Motors Company v. Ford Motor Company,* 522 F.2d 885 (3d Cir.1975). If the release is unclear on its face, the fact-finder must examine the intentions of the parties to determine whether the release applies to a particular situation. *Id.* at 894. Although the language in the release in this case clearly appears to foreclose all actions after plaintiff received final payment of the contract, plaintiff argues that this type of release which depends on the future action of a party to the contract, *i.e.* acceptance of final payment, in order to take effect should be treated differently from a release which is automatically effective at the time of the signing of the contract. Since the party's action of acceptance triggers the release, plaintiff reasons, a consideration of the factual circumstances surrounding the acceptance of final payment and the intention of the party in accepting payment is essential to determine whether the release was effective or not. Thus, plaintiff argues, questions of fact exist which preclude a granting of summary judgment.

Plaintiff has not been able to cite nor have I found a Pennsylvania case dealing with the type of release in question here. Therefore, I must predict what the Pennsylvania Supreme Court would do in this situation. In predicting what the Pennsyl-

vania Supreme Court would decide, I may rely on decisions of other federal courts. *McKenna v. Ortho Pharmaceutical Corporation*, 622 F.2d 657 (3d Cir.1980), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237.

Three cases involving government contracts decided by the Contract Board of Appeals provide guidance. While recognizing that releases based on acceptance of final payment are generally binding, the Board has carved out exceptions to the general rule.

In *Aero-Jet—General Corporation*, ASBCA No. 13372, (1973–2) BCA ¶ 10164 (1973), the Board held that where (1) the party asserting the release as a defense knew or should have known that the party accepting payment had another claim which it intended to assert, and (2) the party asserting the release continued to consider the claim after final payment and (3) the parties never intended to include the claim in the release, that claim was not released by acceptance of final payment.

Other cases decided by the Board also support plaintiff's position. In *Oregon Electric Construction, Inc.*, ASBCA No. 13778, 1970–2 BCA ¶ 8504 (1970), and *Richard K.W. Thom, Inc.* ASBCA No. 7948, 1962 BCA ¶ 3537 (1962), the Board refused to uphold the defense of a general release because there was no reliance on the release by the government and neither party intended that the general release be a release of a claim which had been asserted before acceptance of payment or signing of the release.

The common elements shared by these three cases are that a claim was made known to the party asserting the release as a defense before acceptance of final payment or the signing of the release and the parties never intended that the release apply to that claim.

■ Because Pennsylvania allows the fact-finder to examine the intentions of the parties if a release provision is unclear on its face, and in this case the action of acceptance of final payment allegedly released defendant from liability, I predict that the Pennsylvania Supreme Court would allow the fact-finder to examine the factual circumstances surrounding final payment and the intentions of the parties at the time of acceptance. In the case before me, plaintiff's affidavit has created a question of fact as to whether defendant knew or should have known that plaintiff was asserting a claim for delays and disruptions when plaintiff accepted final payment and whether the parties intended that the acceptance of final payment released plaintiff's claim. Accordingly, the defendant's motion for summary judgment will be denied.